THE PRINCETON LOAN AND TRUST CO. *et al.*

*v.*

PARNELL MUNSON.

1.  TRUST DEED—*sale by trustee—notice.*  Where a person borrowed money and gave a trust deed on real estate to secure its payment in three years, with interest payable annually, and the deed provided that if the interest remained due and unpaid thirty days, the holder of the claim might require the trustee to sell the property, after giving notice as required by the deed, and to apply the money as therein specified; and it was therein agreed that, on default in the payment of any instalment of principal or interest for thirty days after its maturity, the whole debt, principal and interest, should, at the option of the holder, become due and payable, and the property be sold as though the debt had become due by lapse of time:  *Held,* under such a deed, that the trustee was only bound to give the notice required by its terms, and as the deed did not provide for it, he was not required to give notice to the debtor, nor was the holder bound to give notice of his election to treat the whole debt as due.

2.  TRUSTEE—*sale of trust property.*  In such a case, it is not fraud, or ground for setting aside the sale made by the trustee, because he informed the person who became the purchaser, of the amount of the debt previous to the sale; nor did the fact that the trustee said to the person who afterwards became the purchaser of the trust property, that if the money was not paid before the time fixed for the sale, it would be sold, and that he had no expectation it would be paid.  This was not fraud, nor did it work injury to the debtor.

APPEAL from the Superior Court of Cook county ; the Hon. JOHN A. JAMESON, Judge, presiding.

Mr. FARLIN Q. BALL and Mr. GEORGE SCOVILLE, for the appellants.

Mr. JOHN LYLE KING, for the appellee.

Mr. JUSTICE SHELDON delivered the opinion of the Court :

On the 13th day of May, 1869, James G. Blunt executed a trust deed upon a certain lot of ground, in the city of Chicago, to George Scoville, as trustee, to secure the payment of the sum of $5500, in three years, with ten per cent interest payable semi-annually.

It was a loan of money by one Mrs. Gurley, made through the agency of Wright & Tyrrell on her part, and of A. C. Ellithorpe on the part of Blunt.

The November interest was paid, but not promptly : $250 of it on the 23d of the month, and $25 in January.   The second instalment of interest, falling due May 13, 1870, not having been paid, on the 29th day of June, 1870, the trustee made sale of the property under the deed of trust, and it was bid in by the Princeton Loan and Trust Company, which, on the morning of the day of sale, had purchased the bonds for the money secured by the trust deed from Mrs. Gurley, at their face and interest.   It bid upon the property precisely the amount of the bonds and interest and costs of sale, making in all $6000.

After the giving of the trust deed, Blunt sold the property to the appellee, Munson, who was to assume the mortgage upon it, excepting the instalment of interest to fall due in May, which was to be paid by Blunt.

This bill was filed by Munson to set aside the sale.

It alleges that, a short time before the second instalment of interest fell due, on the 13th of May, 1870, Ellithorpe, the agent of Blunt, made with Wright & Tyrrell, as the agents of

Mrs. Gurley, an agreement for the extension of the time of its payment until the middle of July.

We are favored in the case with a written opinion of the judge who heard the cause below, which finds that this agreement for extension of time was not proven, and no claim is made, on the part of the appellee, that it was. We have examined the testimony on this point, and, without entering into the review of it, we will say that we are satisfied with the finding of the court on this question of fact.

The other grounds of complaint set up are, misconduct on the part of the trustee, and fraud between the parties to the sale.

The deed of trust contains the following provisions:

" In trust, that in case of default in the payment of any of the said bonds or any part thereof, or of the said coupons, or either of them, or any part thereof, or in case of a breach of any of the covenants or stipulations herein contained, and if such default or breach shall continue for thirty days, then at any time after the expiration of that period of time, the trustee, on application of the holder of any of said bonds or coupons which may then be due, may sell said premises, or any part thereof, and all right of redemption of said parties of the first part, at public auction, at the north door of the court house, in Chicago, for cash, ten days' public notice having been previously given of the time and place of such sale by advertisement in one of the newspapers published in Chicago, and make a deed to the purchaser; and out of the proceeds of sale, after paying costs of advertising, sale, commissions, and all other expenses of this trust, then to pay the said bonds and coupons, and any additional interest that may have accrued thereon, to the legal holder or holders thereof, rendering the overplus (if any) unto the party of the first part.

" It is stipulated and agreed that, in case of default in any of said payments of principal or interest, or of a breach in any of the covenants and agreements herein, or in any of said

bonds contained, and if said default or breach shall continue for thirty days, then, at expiration of that time, the whole of said principal sums and the interest thereon to the time of sale, shall, at the option of the legal holder or holders of any of the said bonds or coupons, thereupon, or at any time thereafter, as he, she, or they may elect, become due and payable, and the said premises be sold in like manner as if the said indebtedness had matured. And it shall not be necessary for the holder or holders of any of said bonds to give any notice of his, her or their election in declaring said indebtedness due and payable to said party of the first part; but notice to said party of the second part, his heirs, successor or successors, to this trust then acting by virtue hereof, shall be sufficient."

The specific acts of violation of duty on the part of the trustee, insisted upon in argument by the appellee's counsel, and upon which the opinion of the court rests its decree setting aside the sale, are, the not giving personal notice to Blunt, or his agent, Ellithorpe, of the intended sale, or of the fact that the holder of the indebtedness had exercised her option to make the whole debt due, and that the trustee informed the agent of the Princeton Loan and Trust Company of the amount of the debt, and that unless the parties came in and paid the claim, the sale would be made the next day; and that he thought they would not do so.

The maker of this trust deed, by his own voluntary agreement, provided this mode of sale, instead of a judicial one, for realizing from the security the money to pay his debt. Had the sale been a judicial one, the time of its taking place might have been subject to as much uncertainty as the one which here took place; but no actual personal notice to the debtor of the sale would have been necessary; only the public notice required by law would have been requisite. The debtor himself here prescribed the kind of notice which should be given

in case of sale—it was not personal notice, but notice by advertisement in a newspaper. To say that a further personal notice was required by implication, would be to annex a condition to the power of sale, which the maker of the power did not see fit to provide, and the court would be making a contract for the parties, instead of enforcing the one made by themselves.

The deed of trust did not require any notice to be given to the debtor himself, by the trustee or any one else, of the exercise of the option to make the whole indebtedness due; at the most, it only contemplated that such notice should be given to the trustee.

The maker of the deed of trust knew that such a contingency was liable to occur at any time during a default of payment; and if he had wished personal notice of it to himself to be a condition precedent to the exercise of the power of sale, he should have so provided by his deed.

To add to the power, by implication, such a condition, might wrongfully disappoint the expectation of the creditor. The creditor, as well as the debtor, had an interest in the execution of the power of sale. The terms and conditions upon which it should be exercised, were arranged by their mutual agreement. According to the contract made by the parties, the creditor was not to be subjected to a longer delay than forty days before he could realize from the security any arrear of payment. To require a personal notice to the debtor, who, at the time, might be in distant or unknown parts, might create a very inconvenient delay in the collection of a claim evidently intended by the parties to be speedy; and the creditor might well have refused to accept a security trammeled with such a condition.

However proper the giving of personal notice by the trustee to the debtor, of the sale, or of an exercise of the option to made the whole indebtedness due, might have been, we could not hold it to be a condition precedent, to be complied with, in order to a valid exercise of the power of sale.

We do not perceive the force of the objection, that the trustee informed Reed, the agent of the company, of the amount of the indebtedness upon the property. The complaint is not that the information was, in any respect, false or misleading, but it is insisted that such information should not have been given at all. Surely the statement of the amount of the debt to the public, in the published notice of sale, would not be held to affect the validity of the sale. Why, any more, should the statement of the same by the trustee to an individual inquirer? We do not see the propriety, or the advantage, of any concealment in such matter. Were there any breach of duty involved, it would seem to be in withholding, rather than in giving, such asked for information. That such conduct, as is said, amounts in substance to a bargain between the trustee and the purchaser, that if he would bid so much he could take the property, we fail entirely to see.

Nor do we regard the statement of the trustee, that unless the parties came in and paid the claim, which he did not think they would do, the sale would be made the following day, as any more a violation of his duty than the statement as to the amount of the debt.

The charge of fraud in this case is not sustained by proof.

It appears, from the evidence, that when Wright & Tyrrell, the agents of Mrs. Gurley, applied to Scoville to proceed and make sale of the property, they informed him they had had trouble in collecting interest, and wished the property could be sold to some person, so they could get the money, and not be obliged to bid in the property. Some days previous, Scoville had been applied to by one Henry C. Reed, of Princeton, a person connected with the Princeton Loan and Trust Company, for information in regard to the investment of several thousand dollars the company wished to make, either by the purchase of property or securities, and was requested, if he found any such opportunity, to inform W. K. Reed, who would be in Chicago; and it was on that account Scoville spoke to W. K. Reed, who was the president of the company, about

the property and the sale.    Mr. Reed doubting whether, under their charter, the company could purchase the property, except in payment of a debt, concluded to purchase the securities, and did so, for their face and interest, for the company, and bid in the property for the company, for the full amount of the claim and costs.

Wright & Tyrrell seem to have had no other end in view, than the faithful collection of the interest due to their principal, for whom they were acting.

The purpose, on the part of Reed, appears to have been none other than the making of an investment in good faith for the exclusive benefit of the company of which he was an officer, which he did, by a fair purchase of the securities, and fairly bidding off the property at a public sale.

The trustee, in calling the attention of Reed to the approaching sale, acted rather in the interest of the owner of the property than otherwise, in inducing attendance at the sale, and he had also called the attention of one or more other persons to it; and although he might, perhaps, with much propriety, have done more than he did, to bring home to the owner actual notice of the sale, he gave all the notice he was required to give, by the terms of the trust confided to him.

The circumstance, that, after the sale, one of the legal firm of which Mr. Scoville was a member, was employed to obtain possession of the property for the company and collect rents, is entitled to very little weight as showing that Scoville had any interest in the subject of the purchase.

The decree of the court below setting aside the sale must be reversed, and the cause remanded for further proceedings in conformity with this opinion.

*Decree reversed.*