Buchanan *et al. v.* The Berkshire Life Insurance Company *et al.*

Filed June 27, 1884.

---

### No. 9205.

### BUCHANAN ET AL. *v.* THE BERKSHIRE LIFE INSURANCE COMPANY ET AL.

PRACTICE.—*Judgment for Failure to Plead.*—Where no rule to reply has been taken, a defendant is not, under the code, entitled to judgment for want of a reply.

MORTGAGE.— *Foreclosure.—Counter-Claim.—Junior Incumbrance.—Judgment.* —In a suit to foreclose a mortgage, making defendant a subsequent mortgagee whose demand is not due, a counter-claim by such defendant, asserting his mortgage, with a view to its adjustment and such a decree as will protect his rights, will resist a demurrer by the mortgagor.

SAME.—*Construction of Mortgage.— When Due at Option of Mortgagee.— Waiver.* —*Promissory Note.*—A mortgage was given to secure a note for a principal sum, and *coupon* notes for interest, due semi-annually in succession. The principal note recited that interest thereon was paid by the *coupons.* The mortgage provided that a failure to pay any *coupon* at maturity, or taxes on the mortgaged property, should, at the option of the mortgagee, make the mortgage debt due and collectible.

*Held,* that the commencement of a suit to foreclose for the whole debt was

a sufficient exercise of the mortgagee's option, and that notice to the mortgagor of this election, before suit brought, need not be alleged or proved.

*Held,* also, that the recital in the principal note was not a waiver of the right of option given by the mortgage.

SAME.—*Harmless Error.—Counter-Claim.—Judgment.—Interest.—New Trial.—Evidence.*—In a suit to foreclose a mortgage, the mortgagor, junior mortgagees, and one who had purchased the premises at a sale for taxes, were made defendants. The latter filed a counter-claim, asserting a lien superior to those of all the other parties, upon which issues were formed by the mortgagor and the other parties, and this part of the cause was ordered to be tried separately, and a continuance thereof granted; while the other issues, including those upon counter-claims filed by the junior mortgagees, were tried. It did not appear whether any or what disposition had ever been made of the issues thus continued for trial.

*Held,* that the record did not show any injury to the mortgagor by this proceeding, and, therefore, he could not question it in the Supreme Court.

*Held,* also, that though the claims of the junior mortgagees were not matured when the counter-claims were filed by the junior mortgagees, yet, having been amended afterwards so as to allege their maturity, a personal judgment for such of them as were due at the time of trial, and a decree of foreclosure for such as were not due, with proper rebate of interest, was not erroneous.

*Held,* also, that any error in fixing the amount of rebate of interest was not reached by a motion for a new trial.

*Held,* also, that no question as to the sufficiency of the evidence to support a decree that the mortgaged property was indivisible is presented by an ordinary motion for a new trial of the whole case; but in such case there should be a request for a special inquiry on that subject, and exception to such finding and decree as may be made upon it, so that the question may be made separately.

SAME.—*Receiver.—Practice.*—Where a receiver has been properly appointed in a suit for the foreclosure of a mortgage, there is no error in continuing the receivership after final decree of foreclosure, nor is any question concerning it presented by a motion for a new trial.

SAME.—*Rents.*—Pending a suit to foreclose a mortgage, if the mortgaged premises be indivisible, the debtor insolvent, and the property sold for taxes, a junior mortgagee defendant, whose debt is not due, having filed a counter-claim setting up his demand, may, on petition showing the facts, and that the property is less in value than the amount of the incumbrances, have an interlocutory order appointing a receiver to collect rents.

SAME.—*Continuance.—Evidence.—Affidavit.*—To a petition, pending a cause, for a receiver, no formal answer is authorized, nor is a refusal to con-

tinue the hearing any error, where it does not appear that the facts can be controverted; nor is any formal pleading proper, and the court may refuse to hear oral evidence, the proper practice requiring affidavits.

SAME.—*Appeal.*—In such case the statute, R. S. 1881, section 1231, authorizing an appeal from an interlocutory order appointing a receiver, does not preclude a review of the question upon a general appeal after final judgment in the cause.

SAME.—*Promissory Notes.*—*Assignment.*—The assignor of a promissory note is not personally liable therefor, where there has been no effort to collect it from the maker and no proof of his insolvency; but if it be one of several notes secured by a mortgage executed to him, a decree of foreclosure against him is proper, in the absence of proof that he has assigned all the notes so secured.

SAME.—*Harmless Error.*—*Demurrer.*—A defendant, whose demurrer to a complaint to foreclose a mortgage has been overruled, but against whom no judgment has been rendered, and who is shown by the evidence to have no interest in the property, is not harmed by the error, and can not complain in the Supreme Court.

SUPREME COURT.—*Judgment.*—*Exceptions.*—A judgment which is beyond the scope of the complaint can not be questioned in the Supreme Court unless it has been objected to below and the question saved by exception.

From the Superior Court of Marion County.

*G. B. Manlove, J. Buchanan, S. M. Shepard* and *C. Martindale,* for appellants.

*J. R. Wilson,* for appellees.

ZOLLARS, J.—On the 20th day of September, 1876, the Berkshire Life Insurance Company, one of the appellees, filed its complaint in the court below, against James Buchanan and wife, William J. Davis and wife, William H. English, Henry Schnull, Albert E. Fletcher, Joseph M. Tilford and wife, and a number of others, to foreclose a mortgage executed to it by Buchanan and wife, and Davis and wife, on the 29th day of December, 1873. This mortgage was executed to secure a $15,000 note of even date, due five years after date, with five per cent. attorney fees, and interest at ten per cent. per annum. The note contains this statement: "The interest is paid to maturity by coupon notes hereto attached which, with the principal, are secured by mortgage." Copies of six of these coupon notes, of $750 each, are filed with the

complaint. They are all of even date with the principal note and mortgage. Each contains a promise to pay $750, with five per cent. attorney fees, if suit be instituted, and ten per cent. after maturity. By their terms they were to mature thirty, thirty-six, forty-two, forty-eight, fifty-four and sixty months after date. The principal and coupon notes were executed by James Buchanan and William J. Davis. The mortgage, a copy of which is filed with the complaint, contains an agreement that the mortgagors should pay all legal taxes and assessments against the property; that on default in that regard, the mortgagee might pay such taxes and assessments, and collect the amount, with ten per cent. interest, under the mortgage. The mortgage also contains an express promise to pay the sum secured, without relief, etc., and five per cent. attorney fees in case of suit upon any of the notes or the mortgage. There is a further stipulation as follows: " The mortgagors agree that upon failure to pay any or either of said principal, interest or coupon notes at maturity, or taxes or assessments, etc., as herein provided, then all of said mortgage debt shall, at mortgagee's option, become due and collectible. But the omission of the mortgagee to exercise this option at any time, or times, shall not preclude said mortgagee from the exercise thereof at any subsequent default or defaults of the mortgagors in making payments as aforesaid."

On the 1st day of December, 1876, a substituted amended complaint was filed. After stating the execution of the notes and mortgage, and the recording of the latter on the 5th day of January, 1874, the complaint contains the further averments that the $750 note, due thirty months after date, is due and unpaid; that the taxes for the year are also due and unpaid, and that according to the terms of the mortgage, on the happening of such defaults, the mortgage should be foreclosed for the whole of the notes evidencing the debt, at the option of the mortgagee, and the mortgagee so elects;

and that all of the notes thus become and are due.   There is the further averment that all of the defendants, except the makers of the mortgage, have; or claim to have, some interest in the mortgaged premises, and that if they have any such interest, the same is junior to the mortgage of the plaintiff, the Insurance Company.

Judgment is asked for $20,000 against the makers of the notes, the foreclosure of the mortgage against all of the defendants, and the sale of the mortgaged premises, or so much as may be necessary to pay the debt, and for all other proper relief.

William H. English and Henry Schnull each filed an answer and cross complaint.   Albert E. Fletcher, Michael Tooley, and the Bank of Commerce and John Wyman, filed cross complaints.   Other answers and cross complaints were filed, some of which are not set out in the record, and others of which we need not notice, as no question is made upon them in this court.   The answers and cross complaints of English, Fletcher, Schnull, the Bank of Commerce and Wyman, are based upon notes and a mortgage to secure the same, executed to appellant Tilford; the notes being executed by Buchanan and Davis, and the mortgage by them and wives, on the 1st day of January, 1874.   A portion of these notes were endorsed by Tilford to these cross complainants.   Fletcher held two of them, one for $3,000, and one for $1,620, each providing for five per cent. attorney fees in case of suit, and ten per cent. interest after maturity, and to become due on or before the 1st day of January, 1883.   English held three of the notes of $3,000 each, with like provisions as to interest and attorney fees, and to mature respectively, on or before the 1st day of January, 1877, 1878 and 1879.   In addition to these, he held three others, one for $540, one for $720, and one for $900, each with like provisions as to interest and attorney fees, and to mature in the order named, on or before the 1st day respectively of January, 1877, 1878 and 1879. Schnull held three of the principal notes of $3,000, with the

same provisions for interest and attorney fees, and to mature on or before the 1st day of January, 1881, 1882, and 1884. In addition to these, he held three others, one for $1,260, one for $1,440, and one for $1,800, to mature at the same dates with the $3,000 notes. The Bank of Commerce and Wyman held two of the notes, one for $3,000, and one for $1,-080, the latter being for interest on the former, each maturing on or before the 1st day of January, 1880, and with the same provisions for interest and attorney fees. The smaller notes held by English, Schnull, Fletcher, the Bank of Commerce and Wyman, are shown by the mortgage to have been given for the interest on the larger and principal notes. These cross complainants, in their pleadings, admit that their liens are junior to that of the insurance company, but assert that they are superior to all others. Each, except the Bank of Commerce and Wyman, alleges that the mortgaged property is indivisible, without most serious injury and the lessening of their security.

English and Schnull aver in their cross complaints, that the property mortgaged is not sufficient to satisfy the claim of the insurance company and their claims, and that those personally liable are not good for the debts, or any one of them, and that the owners of the property are suffering it to get out of repair, and materially injured. They pray for judgment, a foreclosure of the mortgage, the appointment of a receiver, etc. After various other pleadings by the several parties, the cause, except as to the issues tendered by the cross complaint of Tooley, was tried on the 16th day of June, 1877, and judgments and decrees rendered for the plaintiff and cross complainants. From this judgment, Buchanan and wife, and Tilford and wife, appealed to the general term, and thence to this court. The record will be further stated as we proceed with the examination of the several questions discussed by appellant's counsel.

Buchanan and wife answered the complaint of the insurance company by general denial. Subsequently, Buchanan

filed three additional paragraphs of answer. The third was payment, and in bar of the whole complaint. He did not procure, or ask for a rule upon the plaintiff to reply to the answers, and no reply was filed. On the 11th day of June, preceding the trial, he moved for judgment in his favor against the plaintiff, on account of its failure to reply. The motion was overruled, and he excepted.

It is strenuously insisted by appellant Buchanan, that the trial court erred in overruling the motion for judgment, and thus deprived him of a clear statutory right. The statute relied upon is as follows: "Every material allegation of the complaint, not specifically controverted by the answer, and every material allegation of new matter in the answer, not specifically controverted by the reply, shall, for the purpose of the action, be taken as true;" etc. 2 R. S. 1876, p. 71, section 74; section 383, R. S. 1881.

Another section of the code bearing upon this question is as follows: "Where, upon the statements in the pleadings, one party is entitled by law to judgment in his favor, judgment shall be so rendered by the court, though a verdict has been found against such party." 2 R. S. 1876, p. 186, section 372; section 566, R. S. 1881.

Had the plaintiff been called upon to reply, and declined, or had it filed a reply that left the answer of payment uncontroverted, there could be no question about the proper application of these sections of the code, and the error of the court in overruling the motion for judgment.

The almost uniform ruling of this court has been that if a party go to trial without, in some manner, procuring or asking for a reply, he will be regarded as having waived it, and the case will be tried as though the answers were controverted by a general denial. *Preston* v. *Sandford*, 21 Ind. 156; *Shirts* v. *Irons*, 28 Ind. 458; *Ringle* v. *Bicknell*, 32 Ind. 369; *Sutherland* v. *Venard*, 32 Ind. 483; *Train* v. *Gridley*, 36 Ind. 241; *Moffit* v. *Medsker Draining Ass'n*, 48 Ind. 107; *Locke* v. *Merchants Nat'l Bank*, 66 Ind. 353.

There is another section of the code which, we think, should be considered in connection with those above set out. It is as follows: "The court shall call the causes in the order they stand on the docket, and shall compel the parties to file their respective pleadings, and answers to interrogatories, at such time as the court shall deem just, in no case allowing unreasonable delay," etc.   2 R. S. 1876, p. 67, section 68 ; section 400, R. S. 1881.

This section requires, as we understand it, that the court shall direct, by what is known in the practice as a rule, when and by whom pleadings shall be filed. Such orders are made upon the motion of parties desiring pleadings from the adversary.   It has accordingly been held that after a party has appeared to the action, he can not be defaulted for want of an answer until after a rule for such answer has been made by the court.   *Langdon* v. *Bullock*, 8 Ind. 341.

To default a party for want of a pleading, without a rule for such pleading first made by the court, would be contrary to all ideas of the practice as entertained by the profession. And to render judgment for the defendant upon his answer, before he has asked for or procured a rule for a reply, would seem equally anomalous.   It would certainly be unfair and mischievous in practice.   The answer might be filed in the absence of the plaintiff and his counsel, and without notice, rule, or a demand for a reply ; judgment might be rendered against him also in his absence.   In the case in hearing, we think the court did not err in overruling the motion for judgment on the answers on account of the failure to reply.   As we have said, no rule for a reply had been procured or asked for by the party moving for judgment.   It is said in argument, that the motion for judgment was a call upon the plaintiff and the court for a reply.   If that were so, the complaint should be that the court refused to enter and enforce such a rule.   The motion, having been made before any rule was asked for, was equivalent to saying to the court that no reply was wanted, but judgment in its stead.   Although the ques-

tion, in the manner here presented, has not been before this court until now, the cases above cited, we think, clearly establish the rule to be, that before a party is entitled to a judgment for want of a reply, he must have first asked for a rule against the adverse party.

In the case of *Preston* v. *Sandford, supra,* it is said : " When the defendant had put in his affirmative answers, containing matter of avoidance, he was entitled to his rule for a reply ; and, on a failure of the plaintiff to comply with it, he might have craved judgment against him, taking his answers, as admitted, to be true."

The next alleged error discussed by counsel is the overruling of Buchanan's demurrers to the cross complaints of English, Schnull, Fletcher, and the Bank of Commerce and Wyman. The ground of demurrer urged in argument is, that the notes held by these parties were not due when the action was commenced, nor when the cross complaints were first filed. As a matter of fact that is true, as shown by the pleadings. As we have seen from the statement of the case already made, the complaint by the insurance company contains an averment that these cross complainants claimed an interest in the mortgaged premises. This allegation is sufficient to make them proper parties defendants. *Bowen* v. *Wood,* 35 Ind. 268 ; *Martin* v. *Noble,* 29 Ind. 216.

It is well established, also, that junior mortgagees are proper parties defendants in an action to foreclose a senior mortgage. *Proctor* v. *Baker,* 15 Ind. 178 ; *Holmes* v. *Bybee,* 34 Ind. 262 ; Works Pr., section 145, and cases cited ; *Ætna Life Ins. Co.* v. *Finch,* 84 Ind. 301 ; Jones Mort., sections 1378, 1394, 1425.

It may be granted, for the present, that at the time the demurrers were filed, the cross complainants were not entitled to personal judgments, but it does not follow that the cross complaints were not sufficient to withstand the demurrers, for want of facts. It is well settled that if a complaint state facts sufficient to authorize any recovery or relief, it will withstand a demurrer. Being proper parties, and having

been properly brought into court, the junior mortgagees were entitled, at least, to have their rights settled as between themselves, and as against the plaintiff, the makers of the mortgage, and owners of the mortgaged premises, especially as the premises are alleged to be indivisible.   Their cross complaints challenged Mr. Buchanan as one of the makers of the mortgage securing the notes held by them, and as the owner of the mortgaged premises, to contest, or admit the validity of that mortgage, and the nature and extent of the lien created thereby.   There may be a valid cause of action upon the mortgage in the way of adjusting liens, although an action at law may not be maintainable on the notes, because not due.   Jones Mort., section 1215.   See, also *Ulrich* v. *Drischell*, 88 Ind. 354.

We think there was no error in overruling the demurrers. What decree should be finally rendered in favor of these junior mortgagees, we need not stop to inquire, in the consideration of the question raised by the demurrers.

Upon the trial, on the 16th day of June, 1877, the court found that the coupon notes executed to the plaintiff, the Insurance Company, maturing thirty and thirty-six months after date, viz., on the 29th day of June and December, 1876, were due ; that by reason of their non-payment, the whole of the mortgaged debt had matured, and that there was then due to the insurance company, of the principal sum, coupon notes, interest and attorney fees, the sum of $18,118.96.   For this amount personal judgment was rendered, the mortgage foreclosed against the makers and the cross complainants, and the mortgaged property ordered sold.

It is insisted by the appellant Buchanan, that the judgment should have been for the amount of the two coupon notes, interest on the same after maturity, and the stipulated five per cent. attorney fees, and for nothing more.   This is based upon the theory, that the statement in the principal note in relation to the payment of interest by the coupon notes, constitutes a waiver of the stipulation in the mortgage.

If it might be said that there was a difference in time, in the execution of the note and mortgage, the mortgage should be regarded as having been executed last, because, upon its face, it purports to be for the security of notes already executed. The notes and mortgage should be regarded as having been executed at the same time, and the stipulation in each construed with reference to the other. Jones Mort., section 1179.

The statement in the principal note, that the interest was paid by the coupon notes, is sufficient to bar a recovery of interest other than as provided in the coupon notes; but we are unable to see how this statement can overthrow the express agreement in the mortgage, that on failure to pay the interest, or coupon notes, at maturity, the whole of the mortgage debt shall become due and collectible.

It is further insisted that the judgment and order of sale for the whole amount of the debt is erroneous, because the insurance company gave no notice of the exercise of the option under the stipulation in the mortgage before bringing suit. The mortgage makes no provision for notice of any kind. The stipulation is that upon failure to pay any or either of the interest or coupon notes, taxes, etc., as provided, "then all of the said mortgage debt shall, at the option of the mortgagee, become due and collectible." This provision is not by way of penalty or forfeiture, but is an agreement between the parties as to the time when the whole debt should become due and collectible. It was thus to become due, not upon notice to the mortgagor or others, but at the option, the choice, of the mortgagee. At what time or in what manner the option should be exercised was not provided for; that was left entirely with the mortgagee. It is one of the cases, we think, in which the institution of proceedings to foreclose the mortgage sufficiently shows the election to treat the whole debt as due and collectible. Jones Mort., sections 1181 and 1182. Such a notice would not have enabled appellants to prevent a judgment for the whole amount, by the payment of the

Buchanan *et al. v.* The Berkshire Life Insurance Company *et al.*

coupon interest notes overdue, and delinquent taxes, if any. When the whole amount became due by the failure to pay as agreed upon, it was not in the power of appellants to make it otherwise, except with the consent of the mortgagee. They might have paid the whole amount and thus prevented judgment and foreclosure, and this they might have done after suit was begun. Jones Mort., section 1185.

It may be remarked, in passing, that appellants made no offer to pay, either the whole amount or the interest notes, admitted by them to be overdue.

No objections are urged against the validity of the stipulation in the mortgage, or the amount found by the court to be due the plaintiff, except those above stated. We think they are not well taken. What we have said also disposes of the motion to strike out certain portions of the cross complaints, and the objection to the introduction of the notes and mortgage in evidence.

Michael A. Tooley was made a party defendant to the complaint of the insurance company. He filed a cross complaint, setting up that he had purchased the mortgaged premises at tax sales for city, county and State taxes, and that by such purchases he had a superior lien for $1,943.69. Buchanan answered this cross complaint, disputing the validity of the tax sales. Before the trial of the other issues, formed by the several pleadings, the court, on motion of the plaintiff, ordered that the issue tendered by, and formed upon, Tooley's cross complaint should be tried separately. To this order Buchanan objected and excepted, and now insists that it was erroneous.

We can not say that the court erred in making the order; nor can we say from the record before us that by such order the rights of Buchanan were at all affected.

The decree foreclosing the mortgage shows that at the time it was rendered the case as to Tooley had not been tried, and was on that day continued. Of that case the record makes no further mention. For aught that appears from the record, Tooley may have dismissed his cross bill, or the case might

have been tried and his claim defeated. However the facts may be, it is certain that we can not say from the record before us that Buchanan was in any way prejudiced by the separation, and hence need not decide upon the correctness or incorrectness of such separation.

In the findings, which amount to nothing more than a general finding against the defendants, and which may be said to be a part of the final decree for some purposes, the court found, among other things, that the parties personally liable upon the notes to the plaintiff and cross complainants English, Schnull, Fletcher, the Bank of Commerce and Wyman, were wholly insolvent; that the mortgaged property is indivisible and insufficient in value to pay the taxes and mortgage liens; that it had been sold for taxes, and that the amount requisite to redeem the same is $1,948.75; that the whole of the plaintiff's debt was due; that there was due English from Buchanan and Tilford, on one of the principal and coupon notes held by him, the sum of $3,877.28. There was a further finding of the several amounts to become due to English, Schnull, Fletcher, the Bank of Commerce and Wyman from Buchanan and Tilford, with the dates when the same would become due, corresponding with the dates of maturity as fixed by the notes. Following this finding is the final decree proper, giving the insurance company a personal judgment for the amount found due, and foreclosing its mortgage against all of the defendants except Mrs. Tilford and Tooley, who are not named. A personal judgment was also given in favor of English against Buchanan and Tilford for the amount so found due, and the mortgage securing the same, and the other notes held by him, Schnull, Fletcher, and the Bank of Commerce and Wyman, was foreclosed against all of the defendants to the cross complaints of these parties, except Tooley.

The mortgaged property was ordered to be sold *in solido*, and the proceeds applied as follows: *First.* To the payment of costs, except a certain portion adjudged against English and Schnull. *Second.* To the payment of the amount found

due the insurance company.  *Third.*  To the amount found due English.  *Fourth.*  To the payment of the amounts to become due on the notes held by the above named cross complainants, with a proper rebate of interest.

It was further ordered that if the amounts due should be paid before sale, the property should not be sold until a further amount became due under the decree, and if the first amount thus to become due should be paid before sale, a further postponement of sale was provided for, and so on, until the last amount should be paid.   The receivership was continued until the further order of the court, and the receiver, theretofore appointed, was ordered to pay into court all amounts collected, to be applied upon the judgment in favor of the insurance company.

There is a general bill of exceptions in the record which purports to contain all of the evidence.  As set out in the bill, the evidence is wholly documentary.  It contains no evidence upon the question of the value or indivisibility of the mortgaged property, or that it had been sold for taxes, or that any is due; nor is there any evidence upon the question of the insolvency of the makers of the notes.  It is contended upon the part of Buchanan, that on account of such lack of evidence, and for other reasons, the judgment and decree is erroneous, so far as it gives personal judgment against him in favor of English, forecloses the mortgage securing the notes held by the cross complainants, fixes the amount to become due on such notes, orders the property sold *in solido,* and continues the receivership.  He seeks to make these several objections available under the assigned error in the overruling of his motion for a new trial.  No objection was made, or exception taken, as to the form or substance of the judgment.

As we have seen, the court foreclosed the Tilford mortgage, and gave a personal judgment in favor of English for the amount due at the date of the decree, although nothing was due him when his cross bill was first filed.   We do not

think the judgment and decree erroneous in this particular. All the parties in interest and the whole subject-matter were before the court, and there seems to be no good reason why the court should not, in the final decree, settle the several conflicting claims, and thus avoid the multiplication of actions and costs. If some of the notes held by the cross complainants had been due when the cross complaints were filed, and others had fallen due before trial and final decree, it would hardly be contended, under the authorities, that these latter should not have been included in the amount found due. Jones Mort., section 1577 ; *Smalley* v. *Martin,* 1 Clarke Ch. (N. Y.) 293 ; *Adams* v. *Essex,* 1 Bibb, 149 ; *Manning* v. *McClurg,* 14 Wis. 350. In the case last cited, a bond and mortgage securing it had been assigned as collateral security. The debt to secure which the assignment was made not being paid, an action was instituted by the assignee to foreclose the mortgage, and the assignor was made a party defendant. When the action was commenced, a part of the mortgage debt was not due, but became due before final decree. The mortgage was foreclosed for the full amount, the property ordered sold to raise the amount due the assignee, and the surplus found to be due the assignor. In the case in hearing, it must be remembered that the cross complainants were involuntarily brought into court. They were brought in by the plaintiff, the insurance company, and challenged to assert their claim, if they had any. They were bound to meet this challenge and set up whatever rights they had, or suffer loss. *Ulrich* v. *Drischell,* 88 Ind. 354; *Hose* v. *Allwein,* 91 Ind. 497.

Aside from these considerations, the record shows that on the 25th day of January, 1877, after the notes held by English, upon which personal judgment was taken, had matured, the cross complaints of English and Schnull were withdrawn and re-filed. As re-filed, these cross complaints contained the averment that said notes were due and unpaid. The relief to which these cross complainants were entitled should

be measured by the cross complaints as thus re-filed. Doubtless they might have been amended so as to show the maturity of the notes; or supplemental cross complaints might have been filed, showing such maturity. In either case, we know of no reason why English would not have been entitled to a foreclosure of his mortgage, and a personal judgment against Buchanan for the amount so due. Under the statute, he was entitled to have the amounts to become due on deferred notes properly ascertained, with a proper order of sale in case of failure in payment. As has been already shown, Schnull, Fletcher, and the Bank of Commerce and Wyman held notes secured by the same mortgage, executed by and payable to the same party, but maturing later than those held by English. These were assigned by Tilford, the payee. Had all of these notes been held by English, he would have been entitled to a like finding and order as to each. And while the holders of these deferred notes would be regarded as separate mortgagees for some purposes, yet in this action we think they were entitled to the same relief as if the notes had been held by English. For the reasons stated, we are of the opinion that under the pleadings and upon the evidence, no error was committed in the rendition of a personal judgment against Buchanan in favor of English and the foreclosure of the Tilford mortgage.

It is insisted that the court erred in fixing the proper rebate of interest, if the amount to become due on the deferred notes should be paid before the date of maturity. This is an objection to the form and substance of the decree, and was not raised by the motion for a new trial; and as no objection was made or exception saved to the decree, nor any motion made to modify it, the question is not before us for decision. *Bayless* v. *Glenn*, 72 Ind. 5; *Trentman* v. *Wiley*, 85 Ind. 33; *Forgey* v. *First Nat'l Bank, etc.*, 66 Ind. 123; *Beeson* v. *Howard*, 44 Ind. 413; *Higgins* v. *Kendall*, 73 Ind. 522; *Powers* v. *Johnson*, 86 Ind. 298; *Hancock* v. *Heaton*, 53 Ind. 111.

The statute in force at the date of the decree provided that

in cases where several notes were secured by a mortgage, some of which were not due, the court, after final judgment, should ascertain whether the mortgaged premises could be sold in parcels, and if so, order it to be so sold. 2 R. S. 1876, p. 264. Under this statute it has been held that the court may hear the evidence upon the question of the indivisibility of the property after the final judgment, and mould its decree accordingly. *Hannah* v. *Dorrell*, 73 Ind. 465.

It would seem from this, very plainly, that the question of the divisibility of the property is not so connected with the trial of the main case as that an error in the decree upon that question would be cause for a new trial. In some of the earlier cases, it was held that it should appear of record that the court made the proper inquiry and passed upon the question of divisibility, and that if it did not so appear the judgment would be reversed. In the later, and, we think, better considered case of *Thompson* v. *Davis*, 29 Ind. 264, it was held that an omission to make the inquiry and order, in a case where the parties appear and make no motion, nor take any exception to the form of the decree, is not such an error as will authorize a reversal of the judgment; that if the defendant ask for such an inquiry, and it be denied, the error will be corrected by this court, not by a reversal of the judgment, but by remanding the cause, with directions to make the inquiry and order.

In the case in hearing, it is inferable from the preliminary finding, that such an inquiry was made during the trial of the main case, but there is no evidence in the record verifying the inference. The record does not show a request for such an inquiry, or any objection or exception to the decree ordering the property sold *in solido*. For this reason appellants are not in a position to ask a reversal on this portion of the decree.

It is insisted further, that the court erred in continuing the receivership, the bill purporting to contain the evidence showing no evidence authorizing it.

If this question is before us for decision, it must be determined by the legality and validity of the appointment of a receiver in December, preceding the final decree. The final decree upon the subject is as follows: "And as to the receivership heretofore created by order of this court, it is ordered and decreed by this court that the same shall be continued until the further order of this court," etc. Following this is a direction to the receiver, theretofore appointed.

While the question of appointing a receiver was within the issues made by the pleading, it is very evident that no such issue was tried upon the final hearing, and that no receiver was appointed by the final decree. There is simply an order extending the former appointment, based, evidently, upon the facts before the court when such appointment was made. In the motion for a new trial, the continuance of the receivership was assigned as one of the reasons, but no objection was made, nor exception taken to the decree. Such being the case, it may well be said that no question was properly saved as to the last order. But aside from this, if the original appointment was properly made, no valid objection can be urged against the extension. For this reason, we have delayed the consideration of the appointment, although first discussed by counsel.

On the 27th day of November, 1876, after the original cross complaints were filed, the plaintiff, the Insurance Company, and English, Schnull and Fletcher, filed a verified petition for the appointment of a receiver, etc. On the 30th day of the same month, notice of the petition was served upon Buchanan, who had become the sole owner of the property, notifying him that the application would be heard on the 1st day of December. On the 2d day of December he appeared and upon affidavits moved for a continuance of the hearing. This motion was overruled and he excepted. He then moved for leave to file an answer to the petition, which was denied him, and he again excepted. Following this, he asked leave to call witnesses to negative the state-

ments in the petition, which was also denied him, and he ex-cepted. The court thereupon, without further evidence than that contained in the petition and affidavits, appointed a receiver to take charge of the property, collect the rents and pay them into court, subject to the orders of the court, and report his proceedings for further directions. To this order Buchanan objected and excepted. The receiver qualified by proper oath and bond. On the 19th day of February, 1877, the receiver first appointed having died, the court without notice appointed another in his stead. On the 20th day of March following, Buchanan filed a written motion to set aside and vacate the orders of December 2d and February 19th, *supra.* This motion was overruled and he excepted. As we have seen, the main case was tried on the 16th day of June, 1877, and the motion for a new trial was filed on the 21st of that month. In this motion the rulings of the court in refusing the continuance, and appointing the receiver, were assigned as causes for a new trial. On appeal to the general term, the orders of December and February, appointing the receiver, and the overruling of the motion for a new trial, were separately assigned as error. We think that the assignment on the overruling of the motion for a new trial did not, but that the other assignments did present, for decision, the rulings of the court in the appointment of the receiver, and all questions connected therewith, and that on proper assignments the questions are before us for decision.

We are here met by the argument of counsel for appellees, that as the orders were not appealed from within ten days, there is nothing before us for decision in relation thereto; that the general appeal does not bring up those questions. This argument is based upon former decisions of this court, claimed to be in point, and upon the act of 1875, 2 R. S. 1876, p. 115; section 1231, R. S. 1881. This act provides that in all cases in which a receiver shall be appointed or refused, the party aggrieved by such appointment or refusal may, within ten days thereafter, appeal from the de-

cision of the court to the Supreme Court, without awaiting the final determination of such case, and that upon the filing of the proper bond, the authority of a receiver so appointed shall be suspended until the final determination of such appeal.

Under a provision of the code of 1852, which, with some modification, has been carried into the revision of 1881, appeals were allowed from certain interlocutory orders. 2 R. S. 1876, p. 245; sections 646, 647, R. S. 1881. Under this provision it has been frequently held that an appeal will not lie from an interlocutory order appointing a receiver. These are the authorities relied upon by appellees. They cite *Wood* v. *Brewer*, 9 Ind. 86; *Fuller* v. *Adams*, 12 Ind. 559; *Brinkman* v. *Ritzinger*, 82 Ind. 358; Buskirk Pr. 36. Judge Buskirk announces the general doctrine of the cases, that an appeal will not lie from an order appointing a receiver, and states the reasons: *First.* Because the order is not a final judgment within the meaning of section 550 of the code; and, *Second.* It is not embraced by sections 576 and 577 of the code. In each of the above cases, except the last, the appeal was attempted from such an interlocutory order without, and separate from, an appeal of the main case; and it was held in consonance with the doctrine announced by Judge Buskirk, that such an appeal would not lie. The last case cited decides nothing upon the point, but recognizes the doctrine of the other cases. The same doctrine has been announced in other cases not cited by counsel.

Under these decisions, however erroneous the action of the court might be in appointing or refusing to appoint a receiver, there was no relief by appeal until, at least, the decision of the main case in this court. The result doubtless was that in many instances parties were compelled to suffer loss for want of a speedy appeal; and, doubtless, it was for this reason that the act of 1875 was passed, authorizing an appeal from such interlocutory orders, as in other cases provided by the code. In either case, there is a limit fixed within which the

appeal shall be taken.  If an appeal is taken from these interlocutory orders, *as such,* clearly it must be within the limit of the time fixed; or if taken from such an order made after the decision of the main case, but while that case is yet in any manner pending, it must be within the limited time.  But does it follow from this that if no appeal shall be taken until the appeal of the main case, the action of the court in appointing or refusing to appoint a receiver may not be examined and corrected?  We think not.  If the sections of the code of 1852, *supra,* had not been enacted, there would have been no appeal from the interlocutory orders named before the appeal of the main case, or separate from that case; but it does not follow that in such appeal such orders might not have been reviewed and pronounced correct or erroneous. And so in the case of interlocutory orders in relation to receivers; without the act of 1875, there was no appeal separate and apart from the main case, but it does not follow that on appeal of that case, the action of the court in relation to the receiver may not be reviewed; it has never been so decided nor intimated in any case in this court that we have been able to find.

An appeal will not lie from the interlocutory order for partition and the appointment of commissioners, but without doubt, upon the appeal from the final judgment, the order for partition would be before this court for consideration.  We grant that between such a case and the one in hearing the analogy is not perfect, but it is sufficient, we think, to make the practice in one, authority in the other; indeed, the act of 1875, providing for a separate appeal from the interlocutory order appointing or refusing a receiver, seems to recognize the fact that without such appeal the question would be before this court on the appeal of the main case.  The language of the act is, that the appeal may be taken "without awaiting the final determination of such case."  In the adoption of the position contended for by appellee, it might result that the main

case would be reversed, and the receiver left in control of the property.

Having reached the conclusion that we must, upon this appeal, decide upon the validity of the appointment of the receiver, we next dispose of a general objection urged by appellant Buchanan, with much earnestness and force. He contends that by reason of the act of 1861, in relation to the redemption of real estate, a receiver could not be appointed to collect the rents, either before or after the sale, and during the year of redemption. This objection has recently been decided adversely to the position of appellant, and we content ourselves with a citation of the cases. *Connelly* v. *Dickson*, 76 Ind. 440; *Travellers Ins. Co.* v. *Brouse*, 83 Ind. 62. As distinguishing these cases and fixing the rule under the act of 1879, see *Sheeks* v. *Klotz*, 84 Ind. 471.

The material statements in the petition, asking for the appointment of the receiver, are, that there was due to the insurance company $16,000, and to the cross complainants $23,000; that the mortgaged property was not worth over $25,000; could not be sold in parcels; was occupied by tenants; had been sold for taxes in the preceding February; that it would require $1,948.78 to redeem from the sale; that another instalment of taxes would be due in December, and that Tooley, the purchaser at tax sales, would have the right to, and proposed paying the instalment; and further, that those liable upon the notes were wholly insolvent. The prayer is for the appointment of a receiver to forthwith take charge of the property, collect the rents, pay the taxes, and the residue into court, etc.

We are of the opinion that the facts stated in the petition were clearly sufficient to authorize the appointment of the receiver. If the property had been sold for taxes, and was not worth over the amount stated, it was insufficient to pay the tax and mortgage liens; and if it could not be sold in parcels, and those liable for the debts were insolvent, the cross complainants had the undoubted right, although the notes

held by them were not due, to have a receiver appointed to collect the rents from the tenants, that they might be applied in payment of the liens.    2 R. S. 1876, p. 115; *Brinkman* v. *Ritzinger,* 82 Ind. 358; High Rec., section 675; Thomas Mort. 302; *Quincy* v. *Cheeseman,* 4 Sand. Ch. 405; Jones Mort., section 1530.

It is true the mortgage to the insurance company provided that it might pay the taxes and collect the amount back under the mortgage, but it was not bound to do so, and besides, as we have seen, the debt to the company had become due by a failure to pay the notes.

Did the court err in refusing a continuance, the filing of an answer, the hearing of oral testimony, and in the appointment of a receiver?    On the second day after receiving the notice of the petition, Buchanan filed two affidavits, as he states, for the purpose of procuring a continuance.    In the first, after stating the length of the notice, he states that by reason of his wife's sickness he had been unable to prepare his defence as it should be.    The closing portion is as follows: " The defendant's full defence will consist in a full showing as to what has been done with the rents of the said mortgaged premises, the value of the improvements made," etc.

In a second affidavit, filed at the same time, the material statements are, that he had had possession of the premises for three years, during which time he had collected $8,500; that during the last year the tenants had been unable to pay in money, and he had been compelled to receive the rents in trade; that the whole amount so collected, and enough more to make a total of $12,040, had been expended in the payment of taxes, making repairs upon the property, and the payment of previous notes due to the plaintiff and cross complainants; that the taxes really due, aside from the penalty after sale, were not over $1,000; that he was preparing to contest the validity of the sale and pay the amount actually due before the expiration of the time in which payment might be made; that but for the necessary repairs, and the failure to

collect all of the rents in money, he would have paid the taxes when due.

This affidavit seems to contain the full defence mentioned in the first, viz., the amount of rents collected and the value of the improvements made. There was no contradiction of the statements contained in this affidavit, and hence it would seem that a continuance was unnecessary in order that affidavits upon that point might be multiplied.

It is not stated in either affidavit that it could or would be shown, that the property had not been sold for taxes,—that was admitted; nor is it stated therein that the property could be sold in parcels, that the plaintiff's debt was not due, nor that the property was of sufficient value to pay the liens upon it. The fact that the rents had been honestly collected and expended upon the property, and in reducing the mortgage debts, was not sufficient to defeat the appointment of a receiver, the other facts existing as stated in the petition. To entitle Buchanan to a continuance, or defeat the appointment of a receiver, the defence, as made and prepared, should have been broad enough to meet all of the material statements in the petition.

We can not say that the court erred in refusing to allow the answer to be filed, for the reason that the proposed answer is not in the record; indeed, for all practical purposes, the affidavits served, as answers and constituted the defence to the petition. The statute does not provide for an answer, strictly speaking, in such cases. The correct practice is to meet such an application by affidavits, and not by answer and oral proofs. No motion was made to set aside the notice as insufficient, and hence no question is before us in relation to it. We may remark, too, that the parties were warned by the cross complaints that a receiver was asked for. Upon the record before us we can not say that there was available error in the appointment of the receiver; and if there were such error, it would result only in a reversal of the judgment in that particular, and would not affect the foreclosure proceedings in

Buchanan *et al. v.* The Berkshire Life Insurance Company *et al.*

other respects. This appointment having been properly made, so far as shown by the record, the whole matter was in the hands of the court, and, upon the death of the receiver so appointed, it had the authority to appoint a successor without further notice.

We have, with much care, examined all the material points urged for a reversal, on the part of the appellants Buchanans, and finding no error in the record which would justify a reversal, the judgment as to them is affirmed, with costs.

The personal judgment against appellant Joseph M. Tilford must be reversed. One of the notes upon which that judgment was taken was not payable at bank, and there was no evidence upon the trial of any effort to collect from the makers by suit or otherwise; nor was there any evidence of the insolvency of such makers. So far as there is a foreclosure against him, the judgment is affirmed with costs. He is shown to have been a mortgagee. Some of the notes secured by his mortgage he assigned to certain of the cross complainants. The court had the right to presume that he was the holder and owner of the others, the contrary not being shown.

As to Mary A. Tilford, there is not such error in the record as would justify the interference of this court. The decree in favor of the plaintiff is in no sense a foreclosure against her. It is very doubtful whether she is included within the decree in favor of the cross complainants. Such a decree would be beyond the scope of the cross complaints, and hence, in order to preserve any question upon it, she should have objected and excepted to the decree, or made a motion to modify it, neither of which she did. Technically, her demurrers to the cross complaints of English and Schnull should have been sustained, but as the evidence shows that she had no interest in the mortgaged property, and as she claims none, and as no judgment was taken against her for costs, the technical error in overruling the demurrers is entirely harmless. So far, therefore, as there is any judgment against her, it is affirmed.

Filed Nov, 7, 1883.

### On Petition for a Rehearing.

Zollars, J.—It is insisted, in very strong and emphatic language, that the portion of the opinion holding that no notice to appellant, prior to the institution of the action, was necessary, was not well considered. It is hardly necessary to say that the case was decided after a very careful and laborious consideration and examination by the court. It by no means follows that because a question may not be elaborated at great length, with a copious citation of authorities, it has not been well considered. The Wisconsin court sustains the contention of appellant, that notice of the exercise of the option should precede the bringing of the action. This is the only authority appellant has been able to cite. And while we have a very high regard for that court, we think that the doctrine held by it upon this point is against the weight of authority, and is not sustained by sufficient reason. In support of his text, Mr. Jones cites *Harper* v. *Ely*, 56 Ill. 179; *Princeton Loan and Trust Co.* v. *Munson*, 60 Ill. 371; *Cundiff* v. *Brokaw*, 7 Bradwell (Ill.) 147; *Johnson* v. *Van Velsor*, 43 Mich. 208. *Johnson* v. *Van Velsor, supra*, was an action to foreclose a mortgage, as stated by the court: "Both bond and mortgage contained the common interest clause giving the mortgagee an option to consider the whole due in case of a continuing default for thirty days," etc. A bill filed to foreclose the mortgage charged that a considerable amount of interest had accrued and fallen due, and had remained due and unpaid for more than thirty days, and that pursuant to the provisions of the mortgage, the plaintiff elected to consider the whole amount due and payable, and so declared. It was claimed on the part of the defendants, that there had been no valid election to cause the whole amount to be immediately due and payable, because there had been no notice of such election before suit. The court did not regard the point as of practical importance in the case, but said: "According to the weight of authority a declaration in the bill

itself is sufficient, and formal notice of an election prior to the suit is unnecessary, and as we have seen, the bill contained an explicit declaration."

*Cundiff* v. *Brokaw, supra,* was an action to foreclose a mortgage. The condition in the mortgage was, that if any part or instalment of the interest should not be paid within six months after the same became due, then, and in that case, the whole of the note secured by the mortgage, both principal and interest then due, should, at the option of the mortgagee, become immediately due and payable, and the mortgage might be at once foreclosed. It was insisted by the defendant that the action could not be maintained, because it was not shown that notice had been given before the bill was filed that the mortgagee had elected to declare the whole sum due for the non-payment of interest. The court said : " This objection we think not tenable. The mortgage required no such notice to be given. The mortgagor and those holding under him were bound to know that the mortgagee had reserved the right in the mortgage at his option to treat the principal as due, if default was made for over six months in the payment of interest, and that such a contingency was liable to occur at any time when default was made in payment for the length of time mentioned in the mortgage. If the mortgagor wished personal notice as a condition precedent to the commencement of a suit, he should have provided for it in the mortgage. On the contrary, the mortgage provides that if default is made, the mortgage may be at once foreclosed. To require such a notice would be to add a condition to the mortgage not contained in it, and this we are not at liberty to do."

This case covers fully the case before us. The conditions in the mortgages are precisely the same so far as relates to the option. The provision in the mortgage in the case *supra,* in relation to the foreclosure of the mortgage, makes no difference. If, in order that the whole amount might become due, the option should be exercised, it was also necessary to a foreclosure that the option should be exercised. The foreclosure for

the whole amount was dependent upon the whole amount having first become due.

In the case of *Harper* v. *Ely, supra,* it was stipulated in the bond that upon default of payment of interest, etc., the principal sum, at the option of the obligee, should become due. The obligee entered into possession of the real estate, and sold it under a power in the mortgage. It was held that it was not necessary to declare the option prior to the sale. The case is not in all respects like the one before us, but lends support to our ruling. The same may be said of the case of *Princeton Loan and Trust Co.* v. *Munson, supra.*

The case of *Howard* v. *Farley,* 3 Robt. (N. Y.) 599, seems to have been an action upon a bond, with conditions similar to those in the mortgage in suit. The court said: " The plaintiff does not aver, in her complaint, that she elected to deem the principal due by reason of the non-payment of the interest. * * * If an election had been averred in the complaint, that the principal was due by reason of her option so to make it due, then the facts averred would have entitled her to recover the whole amount secured by the condition of the bond, and interest thereon." The fair implication from this is, that such an averment is sufficient without an averment of notice to the obligor of the exercise of such option.

The condition in the mortgage involved in the case of *Hunt* v. *Keech,* 3 Abb. Pr. 204, was the same in substance as the condition in the mortgage in suit. In that case the court said : " The commencement of this suit is a sufficient notice of the determination that the plaintiff intends to treat the whole sum as due."

The case of *Young* v. *McLean,* 63 N. C. 576, is analogous in principle. That action was upon a bond in which the obligor promised to pay at a stated time $180, payable in currency, or in gold at the rate of $145 in currency for $100 in gold, at the option of the holder of the note. The defendants demurred, because the plaintiffs did not aver in the declaration that the defendants had been notified of the option.

After speaking of cases of conditions precedent, the court said: "But shall the defendants be allowed to say that the terms, which they submitted to, and which were intended for the benefit of the plaintiff, shall operate as a condition precedent and defeat that intention; and that, as the plaintiff did not make known his election before the bond fell due, or at all events, before suit brought, he now has no remedy? It is the debtor's duty to seek the creditor, but this construction would shift the burden from the debtor to the creditor, and make what was intended as a benefit, operate as a hardship upon the creditor."

In the case of *Princeton Loan and Trust Co.* v. *Munson, supra,* it was said, speaking of an option clause in a trust deed: "To require a personal notice to the debtor, who, at the time, might be in distant or unknown parts, might create a very inconvenient delay in the collection of a claim evidently intended by the parties to be speedy; and the creditor might well have refused to accept a security trammelled with such a condition. However proper the giving of personal notice  *  *  of an exercise of the option to make the whole indebtedness due, might have been, we could not hold it to be a condition precedent, to be complied with, in order to a valid exercise of the power of sale."

We can not extend this case for a further citation of authorities, nor do we think it necessary, as those cited fully sustain our conclusion. As we said in the principal opinion, the mortgage contains no stipulation for notice of the exercise of the option. Such a notice might have been contracted for, and made a condition precedent, but it was not. Appellant was bound to know that by his defaults the obligee had the right to regard and treat the whole sum as due and collectible, and that nothing was required of him except the exercise of his own will. Upon making default, it was the duty of appellant to seek the creditor. It clearly was not the duty of the creditor to seek him and notify him of the results of his own laches. Such contracts as that contained in the mortgage may be hard

upon debtors, and in some cases they may be the results of the necessities of the debtor, but these considerations can not be allowed to turn aside fixed principles of the law. We have no authority to make contracts for parties, nor modify those made. Our duty is a plain one, to enforce contracts as made, when they come before us. We have re-examined the other questions discussed in appellant's brief upon his petition for a rehearing, and are unable to reach conclusions different from those stated in the principal opinion. It would not be profitable to extend the case by a re-statement, or by a fuller statement of the grounds upon which those conclusions are based. If we had doubts about the correctness of the conclusions reached, we should very readily grant a rehearing. We are not satisfied that a rehearing should be granted, and hence the petition is overruled.

Filed June 27, 1884.