# 354 SUPREME COURT OF INDIANA,

Ulrich *et al. v.* Drischell.

No. 10,161.

## ULRICH ET AL. *v.* DRISCHELL.

| 88 | 354 |
|----|-----|
| 124 | 558 |
| 88 | 354 |
| 129 | 221 |
| 88 | 354 |
| 130 | 95 |
| 88 | 354 |
| 132 | 506 |
| 133 | 575 |
| 88 | 354 |
| 140 | 412 |
| 88 | 354 |
| 146 | 48 |
| 88 | 354 |
| 153 | 653 |
| 88 | 354 |
| 155 | 631 |
| 156 | 570 |
| 88 | 354 |
| 165 | 287 |
| 88 | 354 |
| 167 | 47 |

RES ADJUDICATA.—*Mortgage.*—*Foreclosure.*—Where a senior or junior mortgagee appears to an action, and by cross complaint asks a foreclosure of his mortgage, he will be bound by the decree rendered.

SAME.—*Privity of Estate.*—Where a purchaser from the mortgagor buys the equity of redemption, there is such a privity of estate as entitles him to the benefit of an adjudication releasing the property from a mortgage lien.

SAME.—*Priority of Lien.*—*Judgment.*—Where, in an action to foreclose a mortgage, a senior mortgagee appears, answers, and also pleads by way of cross complaint, and obtains thereon a decree establishing the seniority of his lien, directing payment to be made, first, of his lien, second, of the plaintiff's lien, and the surplus to the mortgagor, such decree concludes him from afterwards enforcing a paramount lien under another mortgage held by him at the time of the filing of his cross complaint, as against one who has bought from the mortgagor and redeemed from the sales made on the judgments and orders embodied in the decree of foreclosure.

SAME.—*Former Adjudication.*—*Subrogation.*—*Redemption.*—In a suit by D. to foreclose a fourth mortgage on real estate executed by U., it appeared that in a former suit by the third mortgagee to foreclose, to which D. was a party, he had by counter-claim set up the first and second mortgages, and prayed foreclosure thereof as liens prior to the third mortgage, that a decree had been entered finding that D. held the fourth mortgage as assignee, and that the same was unpaid, and directing a sale of the land to pay, first, the costs, second, the two senior mortgages of D., third, the third mortgage, and that any balance be paid to U., who, after foreclosure and sale under the decree, conveyed the land to C., who then redeemed.
*Held,* that the former decree was no bar to the present suit.
*Held,* also, that C. should be subrogated to all rights under the first, second and third mortgages as liens prior to the fourth, for so much of the redemption money paid by him, and interest, as was due thereon when he redeemed, and that the money which might be realized by sale of the lands should be applied accordingly.

From the Wayne Circuit Court.

*D. W. Mason* and *T. J. Study,* for appellants.

*H. C. Fox,* for appellee.

ELLIOTT, J.—Briefly stated, the case made by the evidence is this: Israel Ulrich owned land in Wayne county; on the

Ulrich *et al. v.* Drischell.

11th day of December, 1873, he executed a mortgage to the appellee Jacob Drischell to secure the payment of a note for $1,000; on the 25th day of the same month he executed another mortgage to him to secure another note for $1,500; on the 6th of April, 1874, he executed to William Sagel a mortgage for $1,300; on the 4th day of the following September he also executed a mortgage to John Graver to secure a note for $800; subsequently, Amos and Francis Kauffman recovered judgments against Ulrich, which became liens on the equity of redemption in the mortgaged lands; Sagel died, and John H. Kepler, the administrator of his estate, instituted an action to foreclose the mortgage executed to him, making defendants the mortgagees named and also the judgment creditors, and in his complaint averred that they claimed interests in the land by virtue of their respective liens; appellee appeared to that action, filed an answer in denial, and also a cross complaint, asking to have the two mortgages executed to him foreclosed. The mortgagor also appeared and filed answers of general denial to the complaint and cross complaint. Graver filed an answer alleging that he had assigned his mortgage to John Ritter before the commencement of the action; but Ritter was not made a party to the action. The decree proper is prefaced by a statement of facts, from which it appears that the Kauffman judgments and Graver mortgage were unpaid, and had been assigned to appellee before the action was instituted; but in the adjudicating part of the decree no mention is made of the Graver mortgage or Kauffman judgments. The court decreed a foreclosure of the mortgages, as set forth in Kepler's complaint and appellee's cross complaint, and ordered the proceeds of the sale of the mortgaged premises to be applied as follows: first, to the payment of costs; second, to the payment of the amount due appellee upon the mortgage set forth in his cross complaint; third, to the payment of the mortgage set forth in the complaint. The land in controversy was conveyed by Ulrich, the mortgagor and judgment debtor, to the

appellant Conway, who, as owner, redeemed it from the sales made upon the decree and judgment.

The right asserted by Drischell in the present action is to foreclose the mortgage executed to Graver by Ulrich, and by Graver assigned to Ritter, and by Ritter to the appellee. The appellant contests his right upon the ground that the decree in the suit brought by Kepler settled and determined all the rights of the appellee in the mortgaged premises.

The appellants would undoubtedly be entitled to have the decree rendered in the suit brought by Kepler regarded as an adjudication of the rights of the appellee, if the mortgage here sought to be foreclosed had been brought into the issues in that suit by him.   Where a senior or junior mortgagee appears, and, by cross complaint, asks a foreclosure of his mortgage, he will unquestionably be bound by the decree rendered in the suit.   The question of his right to a foreclosure may, when properly put in issue by the pleadings, be litigated and determined, and when it is litigated the decree is conclusive. *Harrison* v. *Phoenix M. L. Ins. Co.*, 83 Ind. 575; *Ætna L. Ins. Co.* v. *Finch*, 84 Ind. 301.   The question in the present case arises out of the fact that the mortgage which is here sought to be foreclosed was not directly, at least, put in issue in the former suit.

We think the appellee is mistaken in affirming that the appellant Conway is not in a position to insist upon the former judgment as an adjudication; upon the concession that such is its effect, there may be a question as to whether it is an adjudication upon the mortgage in suit, but there is none as to the right of the appellant to litigate the question whether it is or is not a conclusive adjudication.   He is not a stranger to that judgment, for there is a privity of estate which entitles him to make an issue as to the effect of the former decree and judgment, in so far as they affect the land bought by him. Where a purchaser from the mortgagor buys the equity of redemption, there is such a privity of estate as entitles him to the benefit of an adjudication releasing the property from

a mortgage lien. If the former judgment releases the lien of the mortgage relied on by the appellee, and concludes him from asserting it against the land, then the appellant Conway has a right to take advantage of it and hold the land relieved from that burden.

The appellant can not hold the land upon the ground that he purchased it on the foreclosure sale, because he obtained his title directly from the mortgagor, and not from the sheriff's sale. The cases which hold that a mortgagee who sells land for one instalment of a mortgage debt, or upon a separate mortgage, can not again sell the land and take away the rights of the purchaser, have no application to such a case as this.

The question here is as to the effect of the former decree, for if that settled all the rights of the appellee, then, as against Conway, he can not enforce the mortgage here declared on. In considering this question these important facts are to be kept in mind:

1st. The complaint in the former action did not aver that the appellee claimed any rights under the present mortgage, but averred that he held the two mortgages executed to him and gave the order of priority of all of the liens. 2d. The appellee, in the former suit, did not set up this mortgage, nor did any other party. 3d. The introductory part of the decree in the former suit recites that the mortgage here sued on is a subsisting and an unpaid lien. 4th. The adjudging part of the decree foreclosed the liens asserted in the complaint and cross complaint, but made no mention of the Graver mortgage here sued on. 5th. The former suit was brought to foreclose a mortgage, to reach and subject to sale real property which stood to several lienors as common security for several debts of different order of priority. 6th. The subject-matter of that action was land, and adequate relief required the full adjustment of conflicting rights and equities.

It is evident from what we have said, that the mortgage now in suit was not directly foreclosed in the former action, and if

there was any adjudication upon the appellee's rights founded on that lien it must be for the reason that the nature of the suit was such as to require a full adjustment of all claims to property which was a common security for several liens.

In the early case of *Fischli* v. *Fischli*, 1 Blackf. 360 (12 Am. Dec. 251), it was said: "Whenever a matter is adjudicated, and finally determined by a competent tribunal, it is considered as forever at rest.    This is a principle upon which the repose of society materially depends; and it therefore prevails, with a very few exceptions, throughout the civilized world.    This principle not only embraces what actually was determined, but also extends to every other matter which the parties might have litigated in the case."    The general rule stated in the extract made has not only gone unchallenged for more than half a century, but a uniform and unbroken line of cases has given it approval: *Comparet* v. *Hanna*, 34 Ind. 74; *Crosby* v. *Jeroloman*, 37 Ind. 264; *Bates* v. *Spooner*, 45 Ind. 489; *Ricker* v. *Pratt*, 48 Ind. 73; *McCaffrey* v. *Corrigan*, 49 Ind. 175; *Landers* v. *George*, 49 Ind. 309; *Greenup* v. *Crooks*, 50 Ind. 410; *Richardson* v. *Jones*, 58 Ind. 240; *Griffin* v. *Wallace*, 66 Ind. 410; *Green* v. *Glynn*, 71 Ind. 336; *Newcome* v. *Wiggins*, 78 Ind. 306; *Ballard* v. *Franklin L. Ins. Co.*, 81 Ind. 239. The rule is recognized as the correct one by the text-writers. 2 Taylor Ev., sec. 1513; Freeman Judg., section 303. The general doctrine so firmly settled can not be disturbed, and the enquiry is as to its applicability to the present case.    It is, however, a general rule to which there are marked exceptions.

It is plain enough that the question of Ulrich's personal liability on the note and mortgage executed to Graver and assigned to the appellee was not litigated, because that question was not involved in the issues, nor was a decision of it necessary to a complete determination of the rights of the parties in the property which was the subject of controversy. It is only such questions as are within the issues, or such as are necessary to a complete determination of the point presented by the complaint, or such as are necessary to a full ad-

justment of conflicting interests in property which constitutes the subject of the controversy that are settled by a judgment. Much as the question of former adjudication has been discussed, there is still much confusion in the authorities. Some of the cases say that it is conclusive only as to such issues as were presented by the pleadings ; but this, it is evident, is not strictly accurate, as may be irrefutably established by a familiar example. Suppose that A. sues B. on a promissory note ; the latter answers failure of consideration, and judgment goes against him ; can there be a doubt as to that judgment concluding B. from afterwards insisting that the note was discharged by payment ? There is no conflict in the authorities upon this point, and yet it is plain that payment was not an issue in the case supposed. *Binck* v. *Wood,* 43 Barb. 315 ; *Loomis* v. *Pulver,* 9 Johns. 244 ; 2 Smith Lead. Cases, 667 ; *Cadaval* v. *Collins,* 4 Ad. & El. 858 ; *Baker* v. *Stinchfield,* 57 Maine, 363 ; *Marriott* v. *Hampton,* 7 T. R. 265 ; Freeman Judg., section 286.

It is incontestably true, therefore, that questions are sometimes settled by a judgment which are not made issues by the pleadings. It is not universally true, on the other hand, that where a party has an opportunity to litigate a question, and neglects to avail himself of it, that the judgment is conclusive. Suppose, for illustration, that A. sues B. on a promissory note, and that the latter, at the time, holds a note against A., and pleads payment only, and is defeated. Can it be doubted that B. may afterwards sue on the note held by him against A.? And yet he has had an ample opportunity to litigate his right to a recovery on that note. If a plaintiff has several notes he is not bound to litigate them all in one action ; this principle is applied to a case where a plaintiff holds several notes secured by the same mortgage. *Crouse* v. *Holman,* 19 Ind. 30. But these examples, while they illustrate the inaccuracy of the broad statements so often found in the books, do not enable us to solve the question which here faces us.

There is a distinction between actions to determine con-

flicting claims to property and actions for the recovery of personal judgments. It is quite clear that an action to quiet title requires the partics to put in issue and litigate all titles held or claimed by them at the time the action was instituted. *Green* v. *Glynn, supra; Lyman* v. *Faris*, 53 Iowa, 498.

While it is true that a proceeding to foreclose a mortgage is not an action to quiet title, it is also true that in very many essential respects it is closely analogous. The parties are brought into court in such a suit for the purpose of adjusting all equities, rights and interests in the land, and the question of their rights to the land is one of the principal and controlling questions of the case. It is, in truth, the dominating and leading purpose of the suit. The subject of the controversy is a thing—the mortgaged real estate—and this the decree directly affects, for it settles the rights of the parties to it, measures their equities and adjusts their interests. In *Tower* v. *White*, 10 Paige, 395, it was held that if a defendant sets up an absolute title as against the mortgage set forth in the complaint, a decree will be conclusive as to all liens and claims which the complainant may have, and that the only way in which the latter can avoid such a result is to set up his other liens. In *Benjamin* v. *Elmira, etc., R. R. Co.*, 49 Barb. 441, it was held that where a junior mortgagee is made a party to answer as to his interest, he must set up all such claims as he may then have. It was said: "The plaintiffs in this action were parties defendant in that suit; their rights were all acquired and existed at the time of its commencement. They were made parties as subsequent incumbrancers by judgment or mortgage. It was alleged in the complaint that their several judgments, mortgages or other claims were subsequent and subordinate and inferior to the said first mortgage, and the lien, encumbrance, claim and effect thereof, as to all the property, real and personal, then or thereafter, of the said railroad company. If there is anything in the principle that when a party is brought into court and given an opportunity to present his claims and contest the rights asserted against him, he

must do so at the peril of being cut off and foreclosed in respect to all such claims, the plaintiffs are clearly estopped from going back of this decree." This case was affirmed by the Court of Appeals, 54 N. Y. 675. In *Manigault* v. *Deas*, 1 Bailey Eq. 278, it was held: "A decree of foreclosure, ascertaining the extent to which the property is liable under the mortgage, is conclusive on the parties; and when executed, extinguishes the mortgage, although it afterwards appear that the property was, in fact, liable to a larger extent." In *Murrell* v. *Smith*, 51 Ala. 301, it was said, of proceedings to foreclose a mortgage, that the obligation upon the parties to put in issue every material question is greater than in an ordinary action at law. The case of *Greenup* v. *Crooks*, 50 Ind. 410, is strongly in point. In that case the suit was to foreclose a mortgage. Defendants, who were made parties to answer as to their interests, answered that they had recovered judgments upon a foreclosure of a mechanic's lien, and alleged that the mortgage was fraudulent. To this answer the plaintiff replied that the defendants, in their action to foreclose their mechanic's lien, alleged that the plaintiff claimed a lien by virtue of the mortgage, and that a judgment was rendered enforcing the lien, but declaring it to be subordinate to the mortgage; and this reply was held good, and the former adjudication pronounced conclusive.

In *Wheeler* v. *VanKuren*, 1 Barb. Ch. 490, it was held that whether a mortgagee seeking to foreclose a mortgage has also a judgment lien is a question which is necessary to be decided in the foreclosure suit. The case of *Homœopathic M. L. Ins. Co.* v. *Sixbury*, 17 Hun, 424, decides that one who omits to set up his claims to property when he has an opportunity to do so is barred. It was said, in the course of the opinion in that case, that "The complainant was a *party*, and if he omitted to set up the claim upon the Mills mortgage, the neglect was his own, and can not be remedied by undertaking to impose a condition on the judgment of foreclosure and sale, for which the judgment itself gives no warrant." Analogous principles

are laid down in the cases of *Minor* v. *Hill*, 58 Ind. 176 (26 Am. R. 71), and *Rain* v. *Manns*, 68 Ill. 264. We have found other cases supporting the general doctrine, but none denying it. We have examined the cases referred to by appellee, and do not think that they are in point. *McSweeney* v. *Carney*, 72 Ind. 430; *Duncan* v. *Holcomb*, 26 Ind. 378; *Bottorff* v. *Wise*, 53 Ind. 32; *Richardson* v. *Jones*, 58 Ind. 240, are not cases where conflicting claims to property were the subjects of litigation; nor were they cases where a determination of rights and equities in real property was necessary to a complete determination of the controversy. *Griffin* v. *Wallace, supra,* is more nearly in point; but, conceding the correctness of that decision, it is still plainly distinguishable from the present case. There the defendant in an action upon an injunction bond set up other grounds for an injunction, and the court held that the answer was bad, thus deciding that the failure to plead the matters in the complaint in the first suit precluded the defendant from pleading them to the action on the bond, and the decision is, therefore, against rather than for the appellee. The case of *Krutsinger* v. *Brown,* 72 Ind. 466, is very different from the one at bar. The answer under examination in that case showed that the interest of the senior mortgagee was not only not litigated, but that his rights were saved and excepted from the operation of the decree. What we have said of the case just cited applies to the case of *Coleman* v. *Witherspoon,* 76 Ind. 285, for there the decree saved the rights of the mortgagee. It is true of such a case, as was there said, that the bare fact that a senior mortgagee is a party does not estop him from afterwards foreclosing his mortgage; but that remark does not apply to a case where issues are made as to the conflicting claims and equities of the parties, and a decree settles and adjusts them.

We think it must be held that the general rule is that where a party is challenged to assert his interest in mortgaged property, and he appears, answers, and also pleads by way of cross complaint, asserting title by mortgage, and obtains a decree

Ulrich *et al. v.* Drischell.

upon his cross complaint establishing the seniority of his lien, and directing payment to be made, first of his lien, second of the plaintiff's lien, and, third, payment of the surplus to the mortgagor, the decree concludes him from afterwards asserting title under another mortgage held by him at the time of the filing of his cross complaint, as against one who has bought from the mortgagor and redeemed from the sales made on the judgments and orders embodied in the decree of foreclosure. We can not perceive how it can be otherwise upon principle. The right which he is asked to make good is his whole interest and claim to the property, and he ought to put in issue his entire claim. It is impossible that there can be a complete determination of all claims to the property if a claimant is entitled to assert part and withhold part of his claim. In taking a decree, providing that the surplus remaining after the payment of the liens established by the decree shall be paid to the mortgagor, the plaintiff, or cross complainant, causes an adjudication to be made that there are no other liens to be paid. This we say is the effect of the adjudication, for if there were other liens the mortgagor would not be entitled to the surplus. In decreeing that he is entitled to it, there is an adjudication that no one of the other parties to the suit has any right to the avails of the sale remaining after satisfying the liens declared.

Regarding, as we must, the general rule as against the appellee, the next step in our investigation is to ascertain whether there is anything in the case taking it out of the operation of the rule.

It is agreed on all sides, that where a lien is expressly reserved from the operation of the decree, it is not barred or impaired, and if appellee's lien was reserved from the effect of the decree, then he may yet enforce it. If it is reserved, it must be by force of what is termed the preface to the decree. This preface, as it is called, is a statement of the findings of the court, and is part of the orderbook entry; it is not a separate and distinct finding or order,

but is blended with the decretal order of the court, and is really necessary for a proper and intelligent understanding of the effect of the decree. Such findings, or statements, are usually, if not invariably, contained in decrees of foreclosure, and are certainly found in the approved precedents. Iglehart's Pl. & Prac. 924; 2 Van Santvoord's Eq. 520. It is the practice to recite in such decrees service of process, the submission for trial, and to state what the court finds, not, it is true, specifically, but generally; and this statement forms part of the copy certified to the sheriff, as well as part of the record of the court. The decree and its recital constitute an entire indivisible order, and are not mere fragmentary and disjointed parts of a record. We think the statements in the nature of a finding may be referred to as forming parts of the final decree, for the purpose of enabling the parties and the courts to fully understand the scope and effect of the decree and judgment. *Barton* v. *McWhinney*, 85 Ind. 481.

We do not mean that for the purposes of a special finding, or for the purposes of a motion for a new trial, the facts stated in a general finding can have a controlling effect, but we do mean that for the purpose of ascertaining on what the decree operates, and what its force and effect is, such findings are entitled to consideration. Nor is this conclusion in conflict with the cases which hold that such general findings can not perform the functions of a special finding of fact; it does not touch such questions.

The effect of this recital is to show that the court did not adjudicate upon the mortgage now sued on, further than to ascertain that it was owned by the appellee, and was unpaid. This is evident, for the decree proper specifically disposes of all the other liens, and leaves this with the simple recital that it is owned by the appellee and is unpaid. It is impossible to resist the conclusion, that, taking the decretal order as an entirety, the mortgage now sued on was not foreclosed in the former suit. The order reveals the existence of this lien as

subsisting and unpaid, and provides specifically for the enforcement of all the other valid and unpaid liens.

A purchaser who buys, as the appellant did, after the rendition of a final decree, is chargeable with notice of its force and effect, and the face of this decree disclosed an unpaid mortgage. The record of the county disclosed the same mortgage, and an ordinary purchaser would have been charged with notice. The appellant redeemed from this decree, and must surely be deemed to have had knowledge of the contents of the decree from which he redeemed. It seems clear to us that no injustice is done in holding that the purchaser under such circumstances takes with notice of the unsatisfied mortgage.

In the note to *LeNeve* v. *LeNeve,* 2 White & T. L. Cas. 154, it is said: "It results from these decisions that whatever is sufficient to direct the attention of the purchaser to the existing right or equity of a third person, and enable him to ascertain that it will be prejudiced by the sale, operates as notice." In discussing this subject in *Bisco* v. *Earl of Banbury,* 1 Cas. Ch. 287, the Lord Chancellor held that the purchasers "could not be ignorant of the mortgage, and ought to have seen that, and that would have led them to the other deeds, in which, pursued from one to another, the whole case must have been discovered to them."

It is contended by the appellant's counsel that if Conway is not entitled to have the mortgage sued on declared extinguished, he is, at all events, entitled to be subrogated to the rights held under the senior mortgages from which he redeemed. It is settled by the almost unanimous decisions of the courts, that a purchaser of real estate, who redeems from a prior mortgage, is entitled as against junior lien-holders to be subrogated to the rights of the mortgagee from whose mortgage he redeemed. The rule is thus stated in Jones on Mortgages, sec. 869: "If a mortgage be paid by a person not personally liable, for the purpose of protecting his estate, he may have the benefit of it in aid of his title, without any assignment to

him, or proof of an intention on his part .to keep it alive."
Another statement of the general rule is this: "As a general
rule, all persons having an interest in property subject to an
incumbrance by which their interest may be prejudiced or
lost have a right to disengage the property from such incum-
brance by the payment of the debt or charge which creates it;
and if such debt be one for, which the ultimate liability rests
upon another party, they will, upon their payment, be subro-
gated to the right of the creditor against the ultimate debtor,
and against the property upon which the debt was a charge."
Sheldon Sub., section 12. At another place this author says:
"One who has paid the money due upon a mortgage of lands to
which he had a title that might have been defeated thereby has
a right to hold the lands as if the mortgage subsisted and had
been assigned to him, until he has received the amount due
upon it from some one who has the right to redeem, whether
he took a discharge or an assignment of the mortgage." Shel-
don Sub., section 14.

It is plain enough that if the appellant had acquired title
before sale, and had redeemed before foreclosure, he could have
relied upon the liens from which he redeemed as against a junior
mortgagee; and we are unable to perceive why the rule should
not apply where title is acquired and redemption made after
foreclosure and sale. The controlling fact that the debt is one
which a third person, the mortgagor, is ultimately liable to pay,
remains the same after sale as it was before; there is, in this
respect, not the slightest change. So, too, the rights acquired
before sale go back to the grantor as they do after sale, and in
this particular the cases are precisely the same. The argument
that the grantee gets no greater rights than his grantor could
convey applies just as forcibly to cases where the redemption
takes place before foreclosure as to cases where it is made sub-
sequent to the sale, and yet no lawyer. doubts the soundness
of the old and salutary rule to which we have referred.

The rule is a just one. The junior mortgagee is in no
worse situation than if the property had remained in the

Ulrich *et al. v.* Drischell.

hands of his original debtor, for the senior mortgage would
have cut off the junior; nor is the purchaser at the foreclosure
sale wronged, for he gets all he paid, with generous interest.
In more ways than one the rule works beneficially.    It tends
to compel mortgagees to embrace all their liens in one action
and to make the mortgaged property bring its fair value; it
tends to put confidence in titles acquired at judicial sales, for
the purchaser feels that if he does not secure title he at least
secures a paramount lien ; and, lastly, it tends to prevent op-
pression by giving the debtor an opportunity to sell his right
of redemption, burdened to no greater extent than when he
held the property, but subject to all the mortgages, in their
due order of priority, whereas, if the purchasers were not at
least sure of securing a senior equity, they would be slow to
buy, if, indeed, they would buy at all.    Against these benefits
which result from the rule, not one evil consequence can be
conceived.    The rule is one which should be enlarged rather
than restricted.

Without, however, attempting to define limits or mark
out boundaries for the rule, we apply it to the present case.
We think that a purchaser, in a case where a mortgagee has
three mortgages and sets up only two, but takes a decree set-
tling questions of seniority, providing for payment of the
mortgages specifically set forth in the pleadings, and direct-
ing that the surplus remaining after the payment of the mort-
gages foreclosed should be paid to the mortgagor, may well
avail himself of the order of priority declared in such decree.
The fact that the decree directs payment of the surplus to the
mortgagor is, of itself, sufficient to raise a strong equity in
favor of the purchaser.

Our conclusions are : 1st. That as the introductory part of
the decree shows that the Graver mortgage was an unpaid
and subsisting lien, and as in the body of the decree provision
is made for the payment of the liens specifically foreclosed,
and none for that one, the appellee is not concluded by the
former decree, but may foreclose the mortgage acquired from

Graver. 2d. That as Conway was the owner of the land and not personally liable for the debt secured by the mortgage foreclosed, and redeemed from them to protect his title, he is entitled to be subrogated to the rights of the holders of the liens from which he redeemed. 3d. That the appellee is entitled to proceed as the holder of a junior mortgage, but is not entitled to treat the senior liens as extinguished.

Judgment reversed, with instructions to sustain appellants' motion for a new trial.

Petition for a rehearing overruled.