The Indiana, Bloomington and Western Railway Company v. Allen.

No. 13,096.

## The Indiana, Bloomington and Western Railway Company v. Allen.

RAILROAD.—*Seizure of Land Without Condemnation.— Ejectment.—Acquiescence.—Public Rights.—Compensation.*—Where land is seized by a railroad company without right, the general rule is that the owner may maintain ejectment; but where there has been an acquiescence on the part of the owner until public rights have intervened, such an action will not lie, and he will be confined to the recovery of compensation.

SAME.—*Coverture no Excuse for Acquiescence.*—In such case, it is no excuse for the acquiescence that the owner of the land was under the disability of coverture. Coverture can not prevail against a rule of public policy.

REAL ESTATE.—*Quieting Title.—Decree.—Effect of.— Easement.*—Where, in an action to quiet title, the decree contains no limiting clause, but adjudges that the plaintiff has a fee simple title, and that the defendant's claim is unjust and unfounded, every claim of the latter is thereby cut off, including an easement, which is an interest in land.

SAME.—*Estoppel.*—One who obtains a decree quieting his title to lands which have been wrongfully taken and occupied by a railroad company, is not estopped from asserting his rights under the decree by afterwards making application for the assessment of damages, where the railroad company has repudiated such claim and successfully resisted it.

From the Fountain Circuit Court.

*C. W. Fairbanks, L. Nebeker* and *H. H. Dochterman,* for appellant.

*T. F. Davidson,* for appellee.

ELLIOTT, J.—In 1855 Martha Thompson owned the land involved in this controversy. During that year, the New Castle and Danville Railroad Company surveyed a line of road, and set stakes marking the line surveyed. Nothing further was done until 1869 or 1870, when the Indianapolis, Crawfordsville and Danville Railroad Company entered on the land in dispute and constructed a railroad, claiming the right to do so as the successor of the former company, and for a time operated and maintained a railroad carrying mails, passengers and freight, as railroad companies usually do. To

the rights of the companies named the appellant succeeded, and, since its succession, has operated the road as part of its line. At the time of the entry by the Indianapolis, Crawfordsville and Danville Railroad Company, the owner of the land was a married woman, having become the wife of Benjamin Brittingham in 1867. No conveyance to any of the companies was ever executed by her, nor was any express license ever granted by her, nor were any proceedings taken to condemn the land until long after the appellant had acquired its rights. She lived near the land on the line of the railroad from the time of the first entry, in 1855, and owned the quarter-section through which the road ran until August, 1882, when she conveyed it to the appellee. This action was brought by him on the 1st day of May, 1885, to oust the appellant and recover possession. Prior to the commencement of the present action, in February, 1883, the appellee brought suit to quiet title, and obtained a decree quieting title in him. In September, 1883, the appellee began proceedings to compel the assessment and payment of damages, and obtained judgment in the circuit court. This judgment was reversed on appeal. *Indiana, etc., R. W. Co.* v. *Allen,* 100 Ind. 409.

The general rule is, that where land is seized by a railroad company without right, the owner may maintain ejectment. *Graham* v. *Columbus, etc., R. W. Co.,* 27 Ind. 260 (89 Am. Dec. 498); *Graham* v. *Connersville, etc., R. R. Co.,* 36 Ind. 463; *Cox* v. *Louisville, etc., R. R. Co.,* 48 Ind. 178 (194); *Sharpe* v. *St. Louis, etc., R. W. Co.,* 49 Ind. 296; *Terre Haute, etc., R. R. Co.* v. *Rodel,* 89 Ind. 128.

The principle which underlies this rule is the same as that which supports the general rule that an owner may maintain injunction against a corporation which seizes his land without right. *Anderson, etc., R. R. Co.* v. *Kernodle,* 54 Ind. 314; *Midland R. W. Co.* v. *Smith, ante,* p. 233.

But the rule of which we are speaking is a general rule, subject to many exceptions, and to more restrictions than ordinarily surround general rules. One important excep-

tion is, that a failure to bring the action until after public interests have intervened will prevent its successful prosecution. Acquiescence for a considerable period after the railroad company has entered upon its duties as a common carrier, will ordinarily defeat the action. This element did not enter into the earlier cases decided by this court, and those decisions are not decisive of a case where it exists and is brought into issue. Here it exists and is asserted as a defence. Our conclusion is, that acquiescence does defeat the action of ejectment, unless there are countervailing facts or some element which nullifies the force of the acquiescence. We do not assert that it will defeat any action, for we are satisfied that it will not ordinarily defeat an action where only compensation is sought. What we affirm is, that acquiescence after public rights have intervened will prevent a land-owner from destroying the line of road by wresting possession of a part of it from the company. This principle does not rest upon the right of the railroad corporation so much as upon considerations of public policy. The rights of citizens are often abridged in order that the public welfare may be promoted. Chief among the fundamental maxims of jurisprudence is that which declares "That regard be had to the public welfare as the highest law," and this maxim underlies the rule we have under discussion. Under our American Constitutions the maxim is not pushed so far as in England, but it goes far enough with us to supply ample ground for denying one who has slept upon his rights a right to dispossess a railroad company charged with a service public in its nature, and important to the social and commercial interests of the country. Compensation he may recover, possession he can not. To the recovery of just compensation his rights are confined. Our conclusion rests on principle, and is fortified by authority. *Western Pennsylvania R. R. Co.* v. *Johnston*, 59 Pa. St. 290; *Smart* v. *Portsmouth, etc., R. R. Co.*, 20 N. H. 233; *Harrington* v. *St. Paul, etc., R. R. Co.*, 17 Minn. 215; *Harlow* v. *Marquette, etc., R. R. Co.*, 41 Mich. 336; *Maxwell* v.

*Bay City Bridge Co.*, 41 Mich. 453; *Midland R. W. Co.* v. *Smith, supra; Evansville, etc., R. R. Co.* v. *Nye, ante,* p. 223.

Vast interests are often involved in the maintenance of railroads. They are charged with a public service, and a public character is so strongly impressed upon them that courts exercise a control over them much beyond that assumed over individual citizens. They are recognized as instruments of interstate commerce, and as such are within the control of the Federal Congress. *Robbins* v. *Shelby Taxing Dist.,* 120 U. S. 494; *State Freight Tax,* 15 Wall. 232; *Railroad Co.* v. *Maryland,* 21 Wall. 456.

They may exercise rights under the power of eminent domain because of their public character. Towns spring into existence along their lines. Factories, elevators and warehouses are built upon them. The mails of the nation are carried by them. They are common carriers of freight and passengers. All these interests, and more, combine in demanding that a citizen, who has stood by until after the completion of a line of road has involved public interests, shall not be allowed to sever the line and destroy its efficiency by wresting possession of part of it from the company. The case does not stand upon the ordinary doctrine of estoppel. The great principle of public policy enters as an important factor and controls the judgment of the court. Nor is there any great hardship upon the land-owner in yielding to its dominion. Ample remedies are open to him. He may demand and secure full compensation. He may do more, for he may invoke the aid of the strong arm of the courts, but, to do this with success, he must move before public interests are involved. If he remains inactive, better that he suffer, if some one must suffer, than the community. But he need not suffer, for compensation, if seasonably asked, will always be awarded him, although possession will be denied.

We do not controvert the doctrine that acquiescence will not preclude a recovery of damages; that we affirm to be the true doctrine. Unless prolonged until the statute of limita-

The Indiana, Bloomington and Western Railway Company v. Allen.

tions has run, an action for damages will lie; after that period, however, it is conclusively presumed that the damages have been paid. *Brookville, etc., Co.* v. *Butler*, 91 Ind. 134 (46 Am. Rep. 580); *Blair* v. *Kiger*, 111 Ind. 193.

We do not, therefore, question the soundness of the cases which hold that, within the statute of limitations, a claim for compensation, made by one entitled to assert it, may be enforced. *Rusch* v. *Milwaukee, etc., R. R. Co.*, 11 N. W. Rep. 253; *Evans* v. *Missouri, etc., R. W. Co.*, 64 Mo. 453.

Our decision does not impugn the general doctrine of such cases, but it does assert that they do not support the contention that one who has remained inactive until public interests have intervened, can not dispossess the railroad company and thus break the line of communication.

If the appellee's grantor was not under such a disability as prevented her silence from operating against her, she could not have maintained this action unless the decree in the suit to quiet title so conclusively adjudicates the question of title and possession as to preclude the appellant from again bringing it in issue. Leaving that decree out of consideration, we think it clear that the disability of coverture can not avail in such a case as this, where public rights are involved. This is our conclusion, without regard to the change effected by the acts of 1879 and 1881. If the common law, in all its rigor, were the governing rule, the disability of coverture would be of no avail. Before public interests such disabilities must give way. To the welfare of the public such things must yield. We regard the principle which rules here the same as that affirmed in *City of Indianapolis* v. *Kingsbury*, 101 Ind. 200, 219. In that case it was held that a married woman who acquiesced in the use of a street by the public would not be allowed to reclaim the land. Authorities were there cited fully sustaining that doctrine. Nor is there any difficulty in sustaining it, for, in cases of condemnation and dedication, as shown by the authorities there cited, the ordinary rules do not apply. Certainly, this must be so

where public policy controls, for no one can do what the public welfare demands shall not be done. Once it is granted that the public welfare demands that a line of railway shall not be severed by a possessory action, it must inevitably follow that the disability of coverture will not avail, since the rights of the public are paramount to all others. No one can do what public policy forbids. Coverture may prevent the running of the statute of limitations in jurisdictions where it is recognized as a disability; in ours it is doubtful whether it can do so much, but, surely, it can not, in any jurisdiction, prevail against a rule of public policy. *Barnett* v. *Harshbarger*, 105 Ind. 410, 411; *Rosa* v. *Prather*, 103 Ind. 191; *Castner* v. *Walrod*, 83 Ill. 171 (25 Am. Rep. 369).

If we are right in the conclusions we have asserted, then it results that this action can not be maintained unless the rights of the appellee were conclusively established in the suit to quiet title brought in February, 1883. The complaint in that suit consisted of three paragraphs. Two of them were for possession; the third averred that the plaintiffs were the owners in fee, and that the adverse claim of the appellant was unjust and unfounded, and prayed that their title be quieted against the defendant.

Issue was joined, the cause was tried by the court, and a decree rendered against the appellant. The decree was based on the third paragraph of the complaint; the other two were withdrawn. The decree adjudges that prior to the 15th day of August, 1882, Martha E. Brittingham owned the land in fee, and on that day conveyed it by a warranty deed to the appellee; that the claim of the defendant is unjust and unfounded, and that the plaintiff's title be forever quieted and set at rest. It was further provided in the decree that nothing contained in it should prevent either party from having the damages assessed, and that nothing contained in it should prevent either party from claiming the iron and cross-ties laid on the land.

The Indiana, Bloomington and Western Railway Company v. Allen.

The decree in the suit to quiet title conclusively establishes the title of the appellee, and adjudges that the appellant's claim is wholly unfounded. The great object to be accomplished by the statutory action to quiet title is to settle in one action all conflicting claims. It is an enlargement of the equity jurisdiction exercised under bills of peace. 3 Pomeroy Equity Juris., sections 1395, 1397.

In *Green* v. *Glynn*, 71 Ind. 336, it was said: "The very object of the action to quiet title is to determine all conflicting claims, and to remove all clouds from the title of the complainant. If one having a claim is brought into court by a complaint to quiet title, and fails to assert his claim, he is concluded by the judgment, even though he omitted to assert his real claim. The statute was intended to secure repose and to settle in one comprehensive action all conflicting claims."

It was said in *Farrar* v. *Clark*, 97 Ind. 447, that "Our own cases have steadily maintained the doctrine that the action is intended to settle in one proceeding all claims and to put an end to all litigation concerning the title." In many cases it has been asserted that a decree in an action to quiet title, as well as in kindred actions where title is directly put in issue, cuts off all claims of the unsuccessful party, except such as are expressly saved by the decree. *Ulrich* v. *Drischell*, 88 Ind. 354; *Cooter* v. *Baston*, 89 Ind. 185, and authorities cited p. 186; *Stumph* v. *Reger*, 92 Ind. 286; *Ragsdale* v. *Mitchell*, 97 Ind. 458; *Faught* v. *Faught*, 98 Ind. 470; *Watkins* v. *Winings*, 102 Ind. 330.

This rule is as old in this court as the often cited case of *Fischli* v. *Fischli*, 1 Blackf. 360 (12 Am. Dec. 251), for the whole title with all its incidents is involved in the issue and is necessarily adjudicated, and unless only partial title is in issue, or it is otherwise provided, all questions of title are conclusively settled, no matter what their form or character. The authorities elsewhere support our decisons. Pomeroy Rem., section 369; Freeman Judg., section 305.

We assume, therefore, that all questions of title and all claims affecting the title and its incidents may be litigated in an action to quiet title, and, this assumption being established, it inevitably results that the judgment conclusively settles all such questions. This conclusion necessarily results from the principle established by the authorities we have cited, and it is expressly affirmed in other cases. It was so affirmed in the case of *Lessee of Parrish* v. *Ferris*, 2 Black, 606, where it was said, in speaking of a suit to quiet title brought under a statute of Ohio, that "Now it is quite apparent that the title of the defendant to the lands in question is involved under this act, and that the determination of the court must be conclusive against him and all claiming under him as between the parties. If not, the act is of no effect. And it is difficult to see how this determination can take place without at the same time necessarily involving the determination of the plaintiff's title. The estate to be determined by the very terms of the act is an estate adverse to the plaintiff, thus raising an issue between the estates or titles of the respective parties."

In *Reed* v. *Calderwood*, 32 Cal. 109, it was held that a decree in an action to quiet title is a bar to further litigation upon that subject, and this principle was asserted by the court in the earlier cases. *Merced Mining Co.* v. *Fremont*, 7 Cal. 317; *Curtis* v. *Sutter*, 15 Cal. 259.

Mr. Freeman says: "If the defendant recover judgment on the merits, in a proceeding to quiet title under the statute authorizing suits to determine conflicting claims to real estate, the fact that he has a title is as conclusively established as a judgment in favor of the plaintiff would have established that defendant had no title." At another place the author quotes, with approval, the language of the court in *Starr* v. *Stark*, 1 Sawy. C. C. 270: "By the final decree in such a suit, the title to the premises, as between the parties, is determined, and all questions or matters affecting such title are concluded thereby. If either party omits to set forth and

prove all the grounds of his right, or of his adversary's want of it, he can not correct his error by bringing another suit upon the portion or fragment of the case omitted." Freeman Judg., section 309. Our own cases assert the rule quite as emphatically as any others.

In *Dumont* v. *Dufore*, 27 Ind. 263, in speaking of the effect of a decree to quiet title, it was said: "Of what avail, then, can it be to the plaintiff to have the title quieted in him, when, after that is done, he can not recover possession upon it? Equity will not grant a relief in form which must be valueless in fact."

In *Smith* v. *Bryan*, 74 Ind. 515, it was said: "It would be idle to quiet a title that could never be carried into possession."

It was said in *Farrar* v. *Clark, supra,* where the question was as to the effect of a decree in an action to quiet title, that "It is a mistake to suppose that the object of a suit to quiet title is to settle particular claims; on the contrary, it is, as was said, in substance, in *Barton* v. *Mc Whinney*, 85 Ind. 481, an action to quiet the plaintiff's title against all claims of the defendant, whatever they may be. If, then, all claims are included, all claims are necessarily finally adjudicated, and the question of title forever settled."

We have shown that it is agreed, without dissent, that the statute enlarges the equity rule, and that it does so is apparent from the language of the statute itself, but even under the equity rule the decree was conclusive upon all claims not excluded from the controversy. Freeman Judg., section 248. Our statute does not confine the question to one of ownership, but it embraces all claims affecting the owner's right to enjoy his land, for it provides that the action may be brought against any one "who claims title to or interest in real property." R. S. 1881, section 1070. It must result from this, as has been often held, that one who is brought into court to answer as to his interest, must set forth all the interest he then claims, and if he fails to do so his

claim, whatever its character, is barred. The complaint challenges him to present his claim, and it is his own fault if he neglects or declines to use the opportunity offered him of making good his claim. It is the object of our code to settle all claims in one action, and to effect this it has borrowed and enlarged the doctrine of the courts of chancery. Again and again has this principle been asserted and enforced. *Hoes* v. *Boyer*, 108 Ind. 494; *Randall* v. *Lower*, 98 Ind. 255; *Woodworth* v. *Zimmerman*, 92 Ind. 349; *Masters* v. *Templeton*, 92 Ind. 447; *Hose* v. *Allwein*, 91 Ind. 497; *Fitzpatrick* v. *Papa*, 89 Ind. 17; *Ulrich* v. *Drischell*, *supra*; *Davenport* v. *Barnett*, 51 Ind. 329; *Greenup* v. *Crooks*, 50 Ind. 410.

The case before us is quite as strong as one could well be, for here the complaint averred that the appellee was the owner in fee simple and that the claim of the appellant was unjust and unfounded, and so the court expressly finds and decrees. This decree, therefore, adjudges that the whole interest is absolutely in the appellee, and that the claim of the appellant is utterly groundless. A decree adjudging the whole title to be in the plaintiff, and that the defendant's claim is unjust and unfounded, necessarily settles the whole controversy and covers the title and its incidents. This would, indeed, be the effect of the decree if it did no more than adjudge the fee to be in the plaintiff, for he who owns the absolute fee has an unclouded and unburdened estate. As said in *Dumont* v. *Dufore*, *supra*: "A title in fee simple means a title to the whole of the thing absolutely." This statement of the law has been quoted with approval. *Stockton* v. *Lockwood*, 82 Ind. 158; *Arnold* v. *Smith*, 80 Ind. 417.

It is no doubt true that a defendant may have his interest, whatever it may be, protected in a decree; but if the decree contains no limiting clause, and adjudges his claim to be unjust and unfounded, and that of the plaintiff to be in fee simple, it conclusively affirms that he has no claim to the property. *Stumph* v. *Reger*, *supra*. It cuts off every claim,

whatever be its form or character.    But the claim which the appellant here seeks to enforce is a claim to an estate or interest in the land itself.    An easement is an interest in land. *Burk* v. *Hill*, 48 Ind. 52; *Douglass* v. *Thomas*, 103 Ind. 187. It is so completely an estate or interest in land that an action will lie to quiet title to it.    *Davidson* v. *Nicholson*, 59 Ind. 411.    We think it very clear, that, where title has been quieted in the owner of the fee, a claim to an easement is conclusively adjudicated, and can not again be asserted.    But if it were simply a claim, clouding the owner's right, it would be adjudicated.

It is a general principle, pervading every phase of the law of estoppel, that it must be mutual.    Exceptions there may be, but this is the general rule.    This principle effectually disposes of the appellant's contention that the appellee is estopped by the application made for an assessment of damages to insist upon the decree quieting his title.    Had the appellant paid the damages assessed, then, doubtless, the acceptance of the amount would have estopped the appellee.    This it refused to do, and successfully resisted the claim of the appellee, by securing a reversal of the judgment awarding him damages.    *Indiana, etc., R. W. Co.* v. *Allen*, 100 Ind. 409. Having repudiated the claim for damages, the appellant is in no situation to insist that the appellee shall be estopped from asserting his rights under the decree.    There is no equity in appellant's position, for it ought to pay for the land seized without right, or else yield it to the owner.    Having been offered an opportunity to pay for it, there is little of justice in its present position that, notwithstanding the decree quieting title in the appellee and pronouncing its own claim unjust and unfounded, all that can be required of it is to pay damages.

What was said in *Glover* v. *Benjamin*, 73 Ill. 42, is not without force here: " He," the appellant, " protested against the action of the court, and caused a reversal of the decree for the reason that he desired no relief or protection.    It is

now too late for him to insist upon what he repudiated before." So we may say of the present appellant, it is now too late for it to insist upon what it had before repudiated. Having succeeded in obtaining a judgment that the appellee could not maintain a proceeding for the assessment of damages, it can not be permitted to aver that he had no right to dismiss that proceeding. It would be unjust to compel the appellee to persist in a proceeding which, at the demand of the appellant, it was adjudged he had no right to prosecute.

Filed Feb. 7, 1888; petition for a rehearing overruled April 13, 1888.