Gaylord *et al. v.* The City of Lafayette *et al.*

Filed Sept. 19, 1888.

No. 13,820.

GAYLORD ET AL. *v.* THE CITY OF LAFAYETTE ET AL.

TRUST.— *Voluntary Trust.—Consideration.—Irrevocability.*—A voluntary trust, resting upon a meritorious consideration, and perfectly created, is irrevocable.

SAME.— *When Executed.—Definition.*—A trust is executed when it has been perfectly and explicitly declared in a writing duly signed, in which the terms and conditions upon which the legal title to the trust estate has been conveyed or is held, and the final intention of the creator of the trust in respect thereto, appear with such certainty that nothing remains to be done except that the trustee, without further act or appointment from such creator, carry into effect his declared intention; and in such case, though there was no original valuable consideration, the

trust will be enforced in favor of one whose relation to the donor was such as to show a good or meritorious consideration.

SAME.—*When Executory and Incomplete.—Chancery Jurisdiction.*—A trust is incomplete and executory, and not within the jurisdiction of a court of chancery, when property has been conveyed upon a trust, the precise nature of which is imperfectly declared, or when the donor reserves the right to define or appoint the trust estate more particularly, although it may be apparent that the creator of the trust has, in a general way, manifested his ultimate purpose, at a time and in a manner to be determined, either by himself or the trustee, to bestow the property upon a person named.

SAME.—*Perfect or Imperfect Execution of, Question of Fact.—Rules for Determining.*—Whether a trust is perfectly executed or not is a question of fact, to be determined by the purposes and objects which the settlor had in view, as manifested in the writing and by the situation and relation of the parties and of the trust property; and in cases where the writing is indefinite or the language ambiguous, the practical interpretation given it by the parties themselves, in carrying out their purposes, is entitled to great, if not controlling weight.

MORTGAGE.—*Foreclosure.—Effect of.—Res Adjudicata.—Estoppel.*—A decree against a mortgagor in a foreclosure proceeding effectually forecloses all the mortgagor's interest in the mortgaged estate adverse to the plaintiff, held by the former at the time the mortgage was executed, without regard to whether a particular interest then held and afterwards asserted be brought in issue or not, and after such decree, and while it remains in force, the mortgagor is estopped from asserting any anterior right or title to such estate.

From the Tippecanoe Circuit Court.

*J. R. Coffroth, T. A. Stuart* and *B. W. Langdon,* for appellants.

*W. C. L. Taylor, R. Jones, H. W. Chase, F. W. Chase* and *F. S. Chase,* for appellees.

MITCHELL, J.—Thomas F. and Harry C. Gaylord commenced this suit in the month of February, 1882, with the purpose of establishing their right and quieting their title in and to certain real estate in the city of Lafayette.

The undisputed facts, so far as a decision of the merits of the controversy requires them to be stated, are as follows: On the 9th day of April, 1859, Nathan B. Dodge, grandfather of the appellants, resided in the city of Lafayette, at

which place he afterwards died in May, 1866. He was twice married; his second wife, by whom he had one child, survived him.

Of his first marriage there were four children, viz., Joshua Cleves Dodge, who, at the date above mentioned, resided in the city of Boston, Mrs. Emeline F. Granger, Mrs. Martha A. Gaylord, a widow and mother of the appellants, and Mrs. Mary J. Chadwick, with dependent children. The son and daughter first named were in affluent circumstances, while both the daughters last named were comparatively poor. On the date above mentioned Nathan B. Dodge purchased two tracts of land in the city of Lafayette from Albert S. White for $12,600, which amount he afterwards fully paid. One of the tracts, valued at $8,500, was conveyed by White, by the direction of Nathan B. Dodge, immediately to Joshua Cleves Dodge. On the same day the conveyance was made by White, Nathan B. Dodge wrote a letter to his son, Joshua Cleves, of which the following is a copy:

"LAFAYETTE, INDIANA, April 9, 1859.

"CLEVES—I have this day purchased the A. S. White property. I pay $12,600 for it. I have 14 rods on Columbia street and 12 rods on Missouri street, and 81 feet fronting on South street. I gave him the house that I live in at $3,200, a lot that I got in payment for my farm at $800, and $6,000 cash in hand, $1,000 on first of July next, $1,000 in six months, $600 one year from to-day. I have had a deed made out to you for the property where he lives—that is, the cottage and large house 145 feet on Columbia street and 12 rods on Missouri street. I shall build myself a house for my own residence on 81 feet and 12 rods back on the east side of the lot, and a house for rent on South, 81 feet front; the property is now renting for $500 per year. The property that is deeded to you is worth about $8,500. That I shall want a deed from you in a few days to Mrs. Gaylord's children, and Mrs. Chadwick's. I shall send on a deed for you to sign in a few days. The property is now in your name, and I wish

you would tell your wife how it is situated now, that she would know all about it if you should be taken away, and if I should, I want that property that is deeded to you to be made over to the four children, the rents and profits to be paid them yearly for their support, and when they become 21 years of age, to have the property in fee simple to dispose of as they please. * * * I think I have bought the White property very low—it cost him $16,000, and as property is all the time advancing, it must bring that again, but I will not sell it, as it is a good location, and I will let the children have it. * * Will write you again in a few days.

"Yours truly,　　N. B. Dodge."

So much of the reply to the above letter as is pertinent, reads as follows:

"Boston, April 18th, 1859.

"Father—Yours of the 9th was duly received and contents noted. I have told Fanny all about the arrangements you proposed making, in case I should be taken away, and she would follow the injunctions of your letter to me in that event. * * *　　Yours truly,

"J. C. Dodge."

The title to the land referred to in the foregoing correspondence remained as above until the 16th day of November, 1860, when Joshua C. Dodge and wife, at the request of Nathan B., conveyed part of the tract embraced by the deed from White to Joshua C. to Nathan B. Dodge for life, remainder over to Martha A. Gaylord during her life, with remainder over in fee to her two sons, Thomas F. and Harry C. Gaylord. Later on, a similar conveyance was made of the residue of the tract, the title to which remained in Joshua C., with like remainders over, to Mrs. Chadwick and her children. Nathan B. Dodge took possession of the property immediately after the purchase from White, and continued to occupy it until his death, which, as has been seen, occurred in May, 1866, having meanwhile made lasting improvements on the Gaylord tract of the estimated value of $4,500, and

on the Chadwick tract of the value of $6,000. Upon the death of the father, the daughters took possession under the deeds to them respectively.

While so in possession of the parcel conveyed to them as above, Mrs. Gaylord and her two sons, both being at the time over 22 years of age, executed two separate mortgages, covering the Gaylord tract, to secure debts of $7,000 and $2,000, respectively, due to Stephen Jones. These debts, which were evidenced by the joint promissory notes of the mother and sons, were subsequently assigned to John S. Williams, who instituted a foreclosure suit in the superior court of Tippecanoe county in 1876, making Mrs. Gaylord and the appellants, Thomas F. and Harry C. Gaylord, parties thereto. On the 25th day of September, 1876, there was found to be due on the several mortgage debts the sum of $10,304, for which amount a personal judgment was rendered against the mortgagors, which judgment was followed by a decree of foreclosure, and an order directing the sale of the right, title and interest of the mortgagors in and to the property conveyed. The property was sold in pursuance of the decree, John S. Williams becoming the purchaser. It is through this decree and sale that the city of Lafayette claims title to what may be called the Gaylord tract. The Chadwick tract is not directly involved in this litigation.

Upon the facts thus summarized two questions of a controlling character are presented, upon the determination of which the judgment of the court below should either be affirmed or reversed :

1. Was the deed from White to Joshua Cleves Dodge, and the correspondence between the latter and his father, effectual as the declaration of a perfectly created trust, so as to vest the beneficial interest in the land conveyed, at once and irrevocably, in the Gaylord and Chadwick children?

2. If a trust was thereby at once perfectly created and effectually declared, was the interest which the Gaylord chil-

**428**     SUPREME COURT OF INDIANA,

dren took in the land in controversy extinguished by the foreclosure proceedings to which they were made parties?

The appellants seek to maintain the affirmative of the first and the negative of the last of the above propositions.

Pertinent to the first point, it may be said, if the transaction created a trust, since the subject-matter thereof was land, it was essential to its validity that it should have been created or declared in conformity with section 2969, R. S. 1881, which provides that "No trust concerning lands, except such as may arise by implication of law, shall be created, unless in writing, signed by the party creating the same, or by his attorney thereto lawfully authorized in writing."

While a literal interpretation of the above statute might seem to require that the deed or instrument in which the estate or property to be affected by the trust is granted or conveyed, shall also contain the declaration of the trusts upon which the property is to be held, it is nevertheless settled that the statute will be satisfied if the trust has been manifested, or can be proved, by any writing under the hand of the party to be charged, or of the party who is by law enabled to declare the same, provided the fiduciary relation, together with the nature, terms and conditions thereof, are set forth in the writing with sufficient certainty, so as to enable a court to carry it into execution in the manner intended by the donor or creator of the trust. 1 Perry Trusts, sections 82, 83; 2 Pom. Eq. Jur., sections 1006, 1007, and notes. There is hence no well founded objection to the alleged trust in the present case, growing out of the fact that it was manifested by the letters which appear in the record, instead of being declared in the deed from White to Joshua C. Dodge. *Forster* v. *Hale,* 3 Ves. 696; *Brown* v. *Combs,* 29 N. J. 36; *Raybold* v. *Raybold,* 20 Pa. St. 308; *Kingsbury* v. *Burnside,* 58 Ill. 310; *Pinnock* v. *Clough,* 16 Vt. 500; *Steere* v. *Steere,* 5 Johns. Ch. 1; *Hollinshead* v. *Allen,* 17 Pa. St. 275.

The trust in the present case, if one was perfectly created,

was intended as a provision for the grandchildren of the settlor, who were natural objects of his bounty. It was, therefore, upon such a good or meritorious consideration as to be irrevocable and enforceable in case it was created or declared in such a manner as to fall within the category of executed trusts. *Waterman* v. *Morgan,* 114 Ind. 237, and cases cited.

A voluntary trust, resting upon a meritorious consideration, and perfectly created, is irrevocable. *Rycroft* v. *Christy,* 3 Beav. 238; *Paterson* v. *Murphy,* 11 Hare, 88; *Souverbye* v. *Arden,* 1 Johns. Ch. 240; *Hildreth* v. *Elliott,* 8 Pick. 293,

A trust may be said to be executed when it has been perfectly and explicitly declared in a writing duly signed, in which the terms and conditions upon which the legal title to the trust estate has been conveyed, or is held, and the final intention of the creator of the trust in respect thereto, appear with such certainty that nothing remains to be done, except that the trustee, without any further act or appointment from the settlor, carry into effect the intention of the donor as declared. In such a case, even though there was no valuable consideration upon which the trust was originally declared, a court of chancery will enforce it in favor of one whose relation to the donor was such as to show a good or meritorious consideration. *Crawford's Appeal,* 61 Pa. St. 52; *Stone* v. *Hackett,* 12 Gray, 227; *Ellison* v. *Ellison,* 6 Ves. 656; *Kekewich* y. *Manning,* 1 De G. M. & G. 175; 2 Pom. Eq. Jur., section 1001; 1 Perry Trusts, section 98.

Where, however, property has been conveyed upon a trust, the precise nature of which is imperfectly declared, or where the donor reserves the right to define or appoint the trust estate more particularly, although it may be apparent that the creator of the trust has, in a general way, manifested his purpose ultimately, at a time and in a manner thereafter to be determined, either by himself or by the trustee, to bestow the property upon a person named, the trust is incomplete and executory, and not within the jurisdiction of a court of chancery, the rule being that courts of equity will not aid a

volunteer to carry into effect an imperfect gift or an executory trust. *Adamson* v. *Lamb*, 3 Blackf. 446 ; *Harman* v. *James*, 7 Ind. 263 ; *Dillon* v. *Coppin*, 4 Mylne & C. 647 ; *Colyear* v. *Mulgrave*, 2 Keen, 81 (97) ; *Edwards* v. *Jones*, 1 Mylne & C. 226 ; 2 Story Eq. Jur. 793 *b ;* 2 Pom. Eq. Jur., section 1001.

Whether the trust is perfectly executed or not is a question of fact in each case, to be determined by the purposes and objects which the settlor had in view, as manifested in the writing, and from the situation and relation of the parties, and of the property which is the subject of the supposed trust.

In cases where the writing is indefinite or the language ambiguous and of doubtful construction, the practical interpretation given it by the parties themselves in carrying out their purposes, is entitled to great, if not controlling weight and influence. *Reissner* v. *Oxley*, 80 Ind. 580 ; *Chicago* v. *Sheldon*, 9 Wall. 50.

In the present case, the land in controversy was conveyed by White to Joshua Cleves Dodge, upon a valuable consideration fully paid by Nathan B. Dodge, the conveyance being so made by the direction and with the consent of the purchaser.

Under the provisions of the statute, no use or trust in the land resulted in favor of Nathan B. Dodge, or any other persons, except to the extent that Joshua Cleves Dodge agreed to hold the land in trust for his father, or to the extent that a trust in favor of the Gaylord and Chadwick children was declared in the letter of Nathan B. Dodge to his son, Joshua Cleves.

Turning now to the letter, and it will be observed that the writer first informs his son that he had purchased the White property at a stipulated price, and that he had caused the legal title to a portion of it to be conveyed to him. He then proceeds to declare his further purpose in relation to the property as follows : " I shall want a deed from you in a few days

to Mrs. Gaylord's children and Mrs. Chadwick's. I shall send on a deed for you to sign in a few days." This language indicates, beyond the possibility of mistake, that Nathan B. Dodge did not intend that his son, Joshua Cleves Dodge, should take and hold the land in trust for the Gaylord and Chadwick children, except conditionally, until the deeds referred to should be forwarded. His scheme plainly was that the title should be vested in his son for the time being, with a view of ultimately requiring it to be transferred to his grandchildren, in accordance with deeds which he was to have prepared under his own supervision.

The effect of this part of the letter was to create a trust in favor of the father, to hold the title to the land conveyed, until such time as he should, by deeds to be prepared and sent to his son, direct or appoint the ultimate disposition to be made of the estate. The trust estate was conveyed subject to the direction of the father, in the deeds which he reserved the right to require of his son.

While the whole tenor of the letter indicates that it was the purpose of Nathan B. Dodge that the property should be, as it eventually was, settled upon the Gaylord and Chadwick children, it indicates with equal certainty that it was not his purpose to complete the transaction by the conveyance and letter to his son. Something more was to be done by the donor in order to consummate the gift, and vest the title to the property in his grandchildren, in such manner as he might thereafter determine. Taking into account the relation of the parties, the evident desire to make, and the propriety of making, provision for Mrs. Gaylord and Mrs. Chadwick, during their lives, as well as to provide for their children, and it seems to us that the foregoing, in addition to being the interpretation which the parties themselves put upon the letter, is the reasonable and only proper construction to be put upon it.

We have not overlooked that part of the letter of Nathan B. Dodge to his son, in which, after referring to the fact

that the title to the property had been taken in the latter's name, the writer says: "Tell your wife how it is situated now, that she may know all about it if you should be taken away, and if I should, I want that property that is deeded to you to be made over to the four children, the rents and profits to be paid them yearly for their support, and when they become twenty-one years of age to have the property in fee simple to dispose of as they please."

Without pausing to consider what, if any, effect the language above quoted might have upon the conveyance to Joshua Cleves Dodge, in the absence of the declaration previously made by the writer, in respect to his purpose to send deeds for his son to execute, it is only necessary to say it in no way tended to make the trust more certain or perfect, nor did it impair the right which the donor had plainly reserved to himself, to appoint the particular estate which he intended to settle upon the Gaylord and Chadwick children, in the deeds which he declared he should require his son to execute at a future day. It was only in the event of the death of Nathan B. Dodge, without having caused the deeds to be prepared and executed, defining the respective interests of his grandchildren, that the clause last referred to in the letter could become operative. Our conclusion is, that the letter referred to created an imperfect executory trust for the ultimate benefit of the Gaylord and Chadwick children; that, being voluntary, the donor had the right to perfect and complete it by causing conveyances to be made, as he subsequently did. There is nothing in the conclusion reached in *Gaylord* v. *Dodge*, 31 Ind. 41, which is opposed to the decision arrived at in the present case.

In respect to the second proposition, it is sufficient to say, without regard to whether or not the appellants derived their title as *cestuis que trust* under the deed from White to Joshua Cleves Dodge, and the contemporaneous letter of Nathan B. Dodge, or through the deed from Joshua Cleves Dodge to them, there can be no doubt that whatever interest they ac-

tually had in the land, at the time they executed the mort-gage to Jones, no matter how acquired, was included in and conveyed by the mortgage. Even a quitclaim deed or mort-gage conveys or binds the present interest of the grantor or mortgagor. This mortgage having been afterwards fore-closed, and the appellants having been made parties to the proceeding, they are effectually concluded by the decree from asserting any prior interest so long as the judgment remains in force.

The primary purpose of a foreclosure suit is to obtain a decree cutting off and foreclosing whatever interest or estate the mortgagor may have had in the mortgaged premises at the time the mortgage was executed. After the decree, and so long as it remains in force, having been made a party, the mortgagor is estopped from asserting any anterior right or title to the lands mortgaged. If it were otherwise, the con-clusive effect of a decree might always be avoided. *Adair* v. *Mergentheim,* 114 Ind. 303; *Hefner* v. *Insurance Co.,* 123 U. S. 747.

The judgment in a suit to foreclose a mortgage is conclu-sive on all the title held by the defendants at the date of the judgment. *Newcome* v. *Wiggins,* 78 Ind. 306; Freeman Judg., section 303; *Ulrich* v. *Drischell,* 88 Ind. 354.

The appellants sought to avoid the effect of the decree by averring that they had no knowledge of the trust at the time the mortgage was made, nor when the decree of fore-closure was taken, and by averring further, that the mort-gagee and his assignees and the city of Lafayette had knowl-edge of the trust when they acquired their respective rights. These averments, while they might have force in an appli-cation to set aside the decree, do not in any way militate against its conclusive effect while it stands. It has been de-cided, until it should now be accepted as settled, that a judg-ment, however obtained, unless it is void, can not be ignored, and the rights of the parties inquired into in a collateral

proceeding the same as if the judgment had no existence. *Nicholson* v. *Nicholson*, 113 Ind. 131; *Weiss* v. *Guerineau,* 109 Ind. 438.

A decree against a mortgagor in a foreclosure proceeding, is effectual to foreclose all the mortgagor's interest in the mortgaged estate, adverse to the plaintiff, held by the former at the time the mortgage was executed, without regard to whether a particular interest then held, and afterwards asserted, was brought in issue or not. *Barton* v. *Anderson,* 104 Ind. 578.

A decree of foreclosure is as comprehensive in its effect upon the title of the mortgagor as is a decree in a proceeding to quiet title. *Indiana, etc., R. W. Co.* v. *Allen,* 113 Ind. 581.

Counsel have presented and discussed other questions which we have considered, and in respect to which we find no reversible error committed by the court. In view of the conclusions already arrived at, these questions do not affect the merits of the case, nor are they of sufficient importance to justify us in stating them.

The judgment is affirmed, with costs.

Filed Sept. 18, 1888.